## WILLIAM J. LANSING V. STATE OF NEBRASKA.

FILED JANUARY 18, 1905. No. 13,643.

1. **Misdemeanor:** PURE FOOD ACT. The sale of milk adulterated by adding thereto a substance containing poison is made a misdemeanor by the general provisions of chapter 99, laws of 1897, known as the "Pure Food Act."

2. **Information:** ADULTERATED MILK. The allegation in the information that the defendant "did then and there unlawfully and knowingly sell to one William F. Thompson a quantity of milk, to wit, one quart of milk, as and for pure milk, an article of food to which a quantity of a substance or ingredient was added which is poisonous," is sufficient. No special allegation of guilty knowledge is necessary.

3. ———: ———. The allegation that defendant sold milk "as and for pure milk, an article of food," is a sufficient allegation that it was sold as an article of food.

4. **Sale for Analysis.** It is not a violation of the act to sell a quantity of an article of adulterated food as a sample for the purpose of analysis upon demand made for that purpose under section four of the act. If the sale is freely made in the ordinary course of trade without a demand therefor for the purpose of analysis, provisions of section four have no application. The fact that the purchaser intended to analyze it, and that the seller was aware of that intention, will not bring the transaction within the provisions of section four.

5. **Sale:** GUILTY KNOWLEDGE. The statute provides that food shall be considered adulterated if it contains "any added substance or ingredient which is poisonous or injurious to health." A dealer in food, who puts a foreign substance containing poison into the food which he sells, cannot defend such action on the ground that he did not know that such substance contained poison.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*W. M. Morning* and *J. J. Ledwith,* for plaintiff in error.

*Frank N. Prout, Attorney General, Norris Brown* and *J. L. Caldwell, contra.*

SEDGWICK, J.

The defendant, who is plaintiff in error in this court, was found guilty of a violation of chapter 99, laws of 1897, known as the "Pure Food Act."

1. It is contended "that the specific mention of milk in the 5th subdivision, with a definite statement there as to what shall be deemed adulteration of milk within the meaning of that section, excludes it from the general provisions of the section." It is therefore urged that there can be no conviction for the sale of adulterated milk under this act unless the "milk is the produce of a diseased animal, or diluted with an inferior liquid, or mixed with an inferior substance." The language of section three is: "An article of food shall be deemed to be adulterated within the meaning of this act in the following cases: First. If any substance or substances have been mixed with it, so as to lower or depreciate, or injuriously affect its quality, strength or purity. * * * Fifth. If it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not or, in the case of milk, if it is the produce of a diseased animal or diluted with any inferior liquid or mixed with any inferior substance. * * * Seventh. If it contains any added substance or ingredient which is poisonous or injurious to health, or any deleterious substance not a necessary ingredient in its manufacture." It is manifest that the words "or, in the case of milk, if it is the produce of a diseased animal or diluted with any inferior liquid or mixed with any inferior substance" cannot have the force and meaning claimed for them. This clause does not purport to be a complete statement of the adulterations of milk that are intended to be forbidden by the act. The necessary meaning of this section is that any adulteration that would be so considered in the case of any other article of food should be considered an adulteration in the case of milk, and that, in addition thereto, if milk is the

produce of a diseased animal or is diluted with any inferior liquid or mixed with any inferior substance, it shall likewise be considered adulterated within the meaning of the act.

2. It is next urged that the complaint is insufficient in not alleging that the defendant knew that the milk sold was adulterated. The allegation is, "did then and there unlawfully and knowingly sell to one William F. Thompson a quantity of milk, to wit, one quart of milk, as and for pure milk, an article of food, to which a quantity of a substance or ingredient was added which is poisonous." The argument of defendant upon this point is based upon the peculiar construction, above referred to, which he has given the statute. The statute being rightly construed there can be no necessity of a special allegation that the defendant knew that the milk was adulterated.

3. It is said in the brief that the charge that it was "sold as and for pure milk, an article of food," is insufficient. The idea seems to be that under this act it is insufficient to show that the thing sold was in fact an article of food, that it is necessary to allege that it was sold "as and for" an article of food. The complaint sufficiently shows that the substance was sold as milk and that milk is an article of food, and this is a sufficient compliance with the statute in that regard. Section one of the act is:

"That no person shall, within this state, manufacture for sale, offer for sale, or sell, any article of food which is adulterated, within the meaning of this act."

4. The fourth section of the act provides:

"Every person manufacturing, offering or exposing for sale or delivering to a purchaser, any article of food included in the provisions of this act, shall furnish to any person interested, or demanding the same, who shall apply to him for the purpose, and shall tender to him the value of the same, a sample sufficient for the analysis of any such article of food which is in his possession"; and the fifth section makes it a criminal offense to refuse to comply and furnish such sample. The bill of exceptions

shows that the deputy food commissioner purchased the milk for the purpose and with the intention, at the time, of making an analysis of the same to ascertain if the same were adulterated, and it is shown from the statement of facts that the defendant claimed that he knew the purpose for which the milk was purchased, and would so testify.   There is no doubt that, if the sale was made in pursuance of section four of the act, the defendant could not be prosecuted for a sale which he was compelled by law to make, and it is insisted that the facts above indicated show that the sale was made in pursuance of that section. But we do not so view it.   There is nothing to show that the food commissioner applied to the defendant for a sample of milk for the purpose of analysis.   The admission is that the defendant sold to W. F. Thompson one quart of milk, at the time stated in the complaint, and there is nothing to show that he refused to sell it in the regular course of his trade, or that he was under any compulsion, or supposed himself to be under any compulsion, to sell the milk in pursuance of a demand for the purpose of analysis.

5. The judgment is supported by the evidence.   In the stipulation of facts upon which the case was tried in the court below, it is admitted that the defendant "put milk-sweet into the milk and that milk-sweet does contain formaldehyde, a poison."   Under the seventh subdivision of section three above quoted, food is to be considered adulterated if it contains "any added substance or ingredient which is poisonous or injurious to health," and in the first subdivision of that section it is considered adulterated if it contains any substance that injuriously affects its quality, strength or purity.   A dealer in food cannot be heard to say that he has put a foreign substance containing poison into the food which he sells, but that he did not know, at the time, that the foreign substance was poisonous.   The statute (sec. 3) provides "that the provisions of this act shall not apply to mixtures or compounds recognized as ordinary articles of

food, if the same be distinctly labeled as mixtures or compounds, and are not injurious to health." This milk was not distinctly labeled as a mixture or compound, and the article added to it was injurious to health, so that the defendant cannot claim exemption under this provision of the statute.

We find no errors in the record. The judgment of the district court is therefore

AFFIRMED.