WESTERN UNION TELEGRAPH COMPANY v. BRAXTAN.

[No. 20,615. Filed June 21, 1905.]

1. CONSTITUTIONAL LAW. — *Statutes.* — *Title.* — *Construction.* — Where it appears from an inspection of both the title and purview of an act that the provisions of the act are fairly referable to one general subject and that subject is clearly expressed in the title, the act is valid, though more than the general subject is expressed in the title.   p. 167.

2. SAME.—*Statutes.*—*Title.*—*Office of.*—The exclusive office of the title of an act is to apprise the lawmakers of the subject of legislation on which they are called to vote, the details being properly relegated to the purview of the act.   p. 168.

3. SAME.—*Statutes.*—*Title.*—*Details.*—Where details are placed in the title of an act along with the general subject they will be treated as surplusage, unless a clear intention is shown to limit the operation of the act to such details.   p. 168.

4. SAME.—*Statutes.*—*Title.*—*Telegraphs and Telephones.*—The title, "An act prescribing certain duties of telegraph and telephone companies," is sufficient to give notice to legislators that specific duties will be imposed by such act and that penalties will be provided for the enforcement of such duties.   p. 169.

5. SAME. — *Statutes.* — *Title.* — *Telegraphs and Telephones.* — Where the title of a statute is "An act prescribing certain duties of telegraph and telephone companies, prohibiting discrimination between patrons, providing penalties therefor," the second clause, "prohibiting discrimination between patrons," is a specification included within the first, and "providing penalties therefor" is surplusage.   p. 169.

6. CONSTITUTIONAL LAW.—*Statutes.*—*Legislative Purpose.*—In the construction of a statute the courts will look to the legislative purpose as an aid. p. 170.

7. STATUTES.—*Construction.*—*Telegraphs and Telephones.*—Telegraph companies are liable for the penalty provided by statute (§§5511, 5512 Burns 1901, Acts 1885, p. 151) whether their failure to deliver messages be due to wilfulness or negligence. p. 170.

8. WORDS AND PHRASES.—*"Transmission."*—*Telegraphs and Telephones.*—*Statutes.*—The word "transmission," as used in the statute (§§5511, 5512 Burns 1901, Acts 1885, p. 151) prescribing the duties of telegraph and telephone companies, includes delivery. p. 171.

From Orange Circuit Court; *William N. Paynter,* Special Judge.

Action by Thomas N. Braxtan, Jr., against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores, R. F. Davidson, Owen Pickens, G. H. Fearons* and *S. R. Lambdin,* for appellant.

*Bayless Harvey,* for appellee.

HADLEY, J.—Action by appellee for the recovery of a penalty imposed by the statute of April 8, 1885, for default of statutory duty with respect to a message intrusted to appellant. The plaintiff filed the message with the defendant's agent at Indianapolis at 3 o'clock p. m. on June 18, 1903, addressed to E. C. Braxtan, Paoli, Indiana. It was received by the defendant's agent at Paoli at 4:05 o'clock p. m. of same day, but because of the negligence of defendant's agent at Paoli, was not delivered to the addressee till 7:30 o'clock a. m. the next day. The case went to trial by the court on the general denial. Special finding and judgment in favor of appellee for $100.

The single question for decision, and which arises upon the conclusions of law, is thus stated by the appellant:

"The question presented by this appeal is whether, under the act of 1885, a penalty can be adjudged for negligence in the delivery of a telegram."

It is in effect conceded that the dispatch in controversy was not delivered in the order of time in which it was received at Paoli, and that the defendant was guilty of negligence in its delivery.

So much of the act referred to as is pertinent to this inquiry follows: "An act prescribing certain duties of telegraph and telephone companies, prohibiting discrimination between patrons, providing penalties therefor, and declaring an emergency. Section 1. That every telegraph company with a line of wires wholly or partly within this State, and engaged in doing a general telegraphic business, shall during the usual office hours receive dispatches, whether from other telegraph lines or other companies, or individuals, and shall, upon the usual terms, transmit the same with impartiality and in good faith, and in the order of time in which they are received, and shall in no manner discriminate in rates charged or words or figures charged for or manner or conditions of service between any of its patrons, but shall serve individuals, corporations and other telegraphic companies with impartiality." Section two relates to telephone companies. "Section 3. Any person or company violating any of the provisions of this act shall be liable to any party aggrieved in a penalty of $100 for each offense, to be recovered in a civil action in any court of competent jurisdiction." Acts 1885, p. 151, §§5511, 5512 Burns 1901.

It is first contended that the title of the act does not warrant the imposition of the penalty provided by section three for a negligent failure to deliver dispatches, 1. and that such penalty is limited to intended wrongdoing; that is, to acts of partiality and discrimination in rates and service between patrons. The construction

contended for is clearly too narrow, and would strip the law of one of the most salutary features intended by the legislature. We must assume that, in the passage of the act, the legislature had in view the accomplishment of some beneficial purpose, and we must take a reasonable and liberal view of the act as a whole in ascertaining what that purpose really was. In the interpretation of the title we must look to the body of the act, and in construing the body we must look to the title; and if it appears from both that all the provisions of the act are fairly referable to one general subject, and that subject is clearly expressed in the title, the act is valid, though there may be more than the general subject expressed therein. 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §131, and cases cited; *Davis* v. *Woolnough* (1859), 9 Iowa 104.

Furthermore, it should be borne in mind that the general subject of the proposed legislation is all that properly belongs to the title of an act, and that the title's exclusive office is to apprise those who shall be called on to vote upon it as to what that subject is. The details and means by which it is proposed to make the law effective in accomplishing its purpose must be looked for, not in the title, but in the body of the bill. Constitution, Art. 4, §19.

We realize that it is quite common with legislators in the framing of titles to bills, under promptings of extreme caution, to follow the general subject by a statement of particulars, or details—sometimes all, sometimes only in part. In such cases, if the subject is well stated, the specifications and details become surplusage, and of little consequence, for they neither invalidate the act, nor limit its application to any provision that is germane to the general subject expressed in the title, unless the language employed in the title clearly shows that it was the legislative intent to confine the act to the particulars specified. *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134;

1 Lewis's Sutherland, Stat. Constr. (2d ed.), §131; *State, ex rel.,* v. *Atherton* (1886), 19 Nev. 332, 10 Pac. 901; *In re Sugar Notch Borough* (1899), 192 Pa. St. 349, 43 Atl. 985.

Considered in the light of these rules, the title under consideration seems to be devoid of difficulty. It reads: "An act prescribing certain duties of telegraph and telephone companies, prohibiting discrimination between patrons, providing penalties therefor, and declaring an emergency." It is here announced that the subject of the proposed legislation is the prescribing of certain duties of telegraph and telephone companies. Under such a notice legislators should reasonably expect the imposition of specific duties, and the institution of some suitable and efficient means for the enforcement of such duties. So it may be said that the imposition of any reasonable duty, and the prescribing of any reasonable measure for securing a performance of such duties, would be germane to the title.

Besides the first clause of the title fully expresses the subject of the act. The second clause, "prohibiting discrimination between patrons," really means nothing that is not comprehended within the first. Prohibiting discrimination is the prescribing of a duty—the duty of refraining from treating one patron less liberally than another. It is, within the meaning of the title, in every sense as much a duty to refrain from discrimination, as it is to receive and transmit messages with impartiality. And one is just as responsive and germane to the general subject expressed in the first clause of the title as the other. The second clause must therefore be held to be merely a specification within the general meaning of the first. The third clause, "providing penalties therefor," is clearly a detail, which, as we have seen, might have been as well omitted as inserted.

This analysis is strengthened by an inquiry into the legis-

lative purpose. There can be no doubt but that the intention was to correct abuses, and to secure to the public, whose streets and other highways are occupied by the company's poles and wires, a fair, efficient and impartial service. From its nature, prompt delivery lies at the very bottom of the business. Without it, the regular mails would serve the same purpose. Regarded as a method of speedy communication, discrimination, as a rule, is a less evil to patrons than unreasonable delay. The legislation was for the benefit of the public, and not the companies, and no reason appears for safeguarding one essential step less securely than another, or for prescribing a penalty for the infraction of minor duties, and leaving patrons whose messages are made useless through negligence to the precarious and often inadequate remedy of an action for damages. It can hardly be said that it is less harmful to the sender of a dispatch, as in this case, to have his message negligently left in the destination office, within two and one-half blocks of the residence of the sendee, for fifteen and one-half hours, than to be required to pay a greater rate than is charged another for similar services.

The suggestion that discrimination and partiality, as used in the statute, imply wilfulness and positive wrong-doing on the part of the company, as grounds for the penalty, is without substance, because the failure to deliver a dispatch in the order of time in which it is received may occur from carelessness, as well as from wilfulness, and the consequences to the sender are precisely the same.

With respect to penalty, it is apparent that the legislature did not intend to make a distinction between intentional and negligent defaults, for its language (section three) is this: "Any person or company violating any of the provisions of this act shall be liable to any party aggrieved in a penalty of $100."

After further consideration of the act of 1885 and the

title thereto, we remain satisfied with the ruling in *Western Union Tel. Co.* v. *Ferguson* (1901), 157 Ind. 37.

Appellant's second proposition is that "transmission," as used in the statute, does not include delivery. It is incomprehensible how a telegraph company may receive

8.  and transmit a message from one to another without a delivery. A mere statement of the proposition forbids argument. Besides, the question has been otherwise ruled in a number of decisions of this court. See *Western Union Tel. Co.* v. *Lindley* (1878), 62 Ind. 371; *Western Union Tel. Co.* v. *Gougar* (1882), 84 Ind. 176; *Julian* v. *Western Union Tel. Co.* (1884), 98 Ind. 327; *Reese* v. *Western Union Tel. Co.* (1889), 123 Ind. 294, 7 L. R. A. 583.

We find no error. Judgment affirmed.