# MULL *v.* INDIANAPOLIS & CINCINNATI TRACTION COMPANY.

[No. 20,902. Filed June 21, 1907. Rehearing denied October 29, 1907.]

1. **EMINENT DOMAIN.**—*Landlord and Tenant.*—*Street Railroads.*— *Appurtenances.*—The lessee of a street railroad, unless affirmatively authorized by statute, cannot exercise the power of eminent domain to establish a transmission line appurtenant to such railroad. p. 217.

2. **SAME.**—*Street Railroads.*—*Lessees.*—*Statutes.*—Section 5468a Burns 1905, Acts 1903, p. 92, §1, authorizing any street railroad company desiring to "acquire," or having "acquired" a street, interurban, or suburban railroad, to exercise the right of eminent domain in establishing transmission lines, affirmatively authorizes lessee street railroad companies to exercise such right of eminent domain. p. 218.

3. **WORDS AND PHRASES.**—*"Acquire."*—*Statutes.*—*Street Railroads.* —The word "acquire," as used in §5468a Burns 1905, Acts 1903, p. 92, §1, providing that any street railroad company desiring to "acquire," or having "acquired" any street, interurban, or suburban railroad shall have the right to exercise the power of eminent domain in the establishment of necessary transmission lines, includes the obtaining of control by leasing. p. 219.

4. **EMINENT DOMAIN.**—*Street Railroads.*—*Transmission Lines.*— *Appurtenances.*—A lessee street railroad company has the right, under §5468a Burns 1905, Acts 1903, p. 92, §1, to exercise the right of eminent domain in establishing a transmission line on a route disconnected from its railroad right of way. p. 219.

5. EMINENT DOMAIN.—*Street Railroads.*—*Transmission Lines.*— *Public Use.*—The condemnation, by a lessee street railroad company, of a right of way for a transmission line, as authorized by §5468a Burns 1905, Acts 1903, p. 92, §1, constitutes a taking for a public use. p. 220.

6. PLEADING.—*Complaint.*—*Description.*—*Eminent Domain.*—*Street Railroads.*—A complaint, by a lessee street railroad company, to condemn a right of way for a transmission line, and which describes the land sought to be appropriated as a strip six and one-half feet wide lying immediately north of, and adjoining a certain railroad company's right of way through a certain quarter section, sufficiently describes the land sought to be appropriated. p. 220.

7. CONSTITUTIONAL LAW.—*Statutes.*—*Titles.*—*Subject.*—Section 19, Art. 4, of the Constitution, requiring that every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title thereto, was designed to prevent the combining of unrelated subjects, thus compelling legislators to accept obnoxious provisions in order to enact beneficial laws. p. 222.

8. WORDS AND PHRASES.—*"Subject."*—*"Matters."*—*Constitutional Law.*—The word "subject," as used in article 4, §19, of the Constitution, providing that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title," refers to the thing about which legislation is had, and the word "matters" includes subordinate and incidental things related to the subject. p. 222.

9. CONSTITUTIONAL LAW.—*Statutes.*—*Title.*—*Street Railroads.*— The title to the street railroad act of 1903 (Acts 1903, p. 92), reading in part: "An act to amend sections one (1), four (4), and five (5) of an act entitled 'An act concerning street railroad companies, granting additional rights and powers therein specified and matters relating thereto,'" is sufficiently broad to cover provisions for the acquiring, by such companies, of ground for the construction of transmission lines for heat, light and power. p. 222.

10. SAME.—*Statutes.*—*Title.*—*Construction of Words Used.*—The words of the title to a statute will be given a liberal interpretation and their broadest scope in order to bring within it the provisions of the purview of such statute. p. 222.

11. STREET RAILROADS.—*Interurban.*—*Suburban.*—*Eminent Domain.* —*Statutes.*—The use of the words "interurban" and "suburban" in the act of 1903 (Acts 1903, p. 92, §5468a *et seq.* Burns 1905) does not affect the right therein granted to street railroad companies to construct, own and operate interurban and suburban railroads. p. 223.

12. NUISANCE.—*Transmission Lines.*—*Street Railroads.*—*Statutory*

*Sanction.*—A street railroad company's transmission line, authorized by a valid act of the legislature, does not constitute a nuisance *per se.* p. 223.

13. DAMAGES.—*Transmission Lines.*—*Street Railroads.*—The damages recoverable for the condemnation of lands for a street railroad company's transmission line, include the value of the land appropriated, together with such damages as result from the proper construction and operation of such line. p. 223.

14. SAME.—*Street Railroads.*—*Transmission Line.*—*Negligent Operation.*—Damages occurring by reason of the negligent operation of a street railroad company's transmission line are recoverable in an independent action, and not as a part of the damage for the appropriation of the right of way for such line. p. 223.

From Rush Circuit Court; *Will M. Sparks*, Judge.

Condemnation proceeding by the Indianapolis & Cincinnati Traction Company against Leonidas H. Mull. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Douglas Morris*, for appellant.

*Smith, Cambern & Smith*, for appellee.

MONTGOMERY, J.—This action was commenced by appellee against appellant, to condemn land for a proposed electrical line, consisting of poles and wires, for the transmission of electricity from its power-house in Rushville to a station in Shelbyville, where such electricity is to be reduced in voltage and used for lighting and for motive power in operating an interurban railroad extending from Indianapolis to Shelbyville, and its proposed extension to Greensburg, when completed.

Appellant appeared in response to notice, and filed objections to the proceeding, in substance, as follows: (1) That appellee has no right to exercise the power of eminent domain and appropriate the lands described; that the amended complaint does not state facts sufficient (2) to entitle appellee to exercise the power of eminent domain for the use sought, (3) to show the location of the right of way sought, (4) or the general route thereof, (5) or the width of the same through appellant's land, (6) or the termini, (7) or a specific description of the land to be taken, (8) or the

amount and location of the land sought to be appropriated, and proposes to take forty square feet in twenty-five different places, one hundred feet apart, and not connected with or adjoining any highway, or (9) to show that the proposed use is a public use; (10) that appellee is the lessee of the interurban road extending from Indianapolis to Shelbyville, and to be extended to Greensburg, and now operated from a power-house in Shelbyville, and that the only purpose and object of the proposed transmission line is to enable appellee to transmit electricity from its power-house at Rushville to its said leased line, and thereby reduce the expense of running cars thereon, and such transmission line is not intended to be used for any other purpose; (11) that the act of February 26, 1903 (Acts 1903, p. 92, §§5468a-5468e Burns 1905), is in conflict with the Constitution of this State, and the 14th amendment to the Constitution of the United States; (12) that the proposed transmission line as intended to be used would be exceedingly dangerous and would constitute a nuisance; (13) that the proposed use of appellant's land sought to be taken is not in fact, and will not be, a public use; (14) the facts alleged in the amended complaint are denied.

The court, after argument of counsel, overruled the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th and 11th of said objections, to the overruling of each of which appellant at the time excepted, and, declining to amend, elected to stand upon his exception to these rulings. The cause was heard by the court upon the issues joined by the complaint and the 1st, 12th, 13th and 14th objections thereto by appellant. The court made a finding in favor of appellee, and against said objections, and entered an order appointing appraisers as prayed in the complaint.

It is appellant's contention that as appellee is a mere lessee of the railroad to which the proposed transmission line is to be appurtenant, it cannot exercise the power 1. of eminent domain for the declared purpose. It is conceded upon both sides that a lessee cannot con-

demn lands for a use appurtenant to a way of the lessor, unless expressly so authorized by statute.  *Western Union Tel. Co.* v. *Pennsylvania R. Co.* (1904), 195 U. S. 594, 25 Sup. Ct. 150, 49 L. Ed. 332; *Mayor, etc.,* v. *Norwich, etc., R. Co.* (1871), 109 Mass. 103; 15 Cyc. Law and Proc., 572; 10 Am. and Eng. Ency. Law (2d ed.), 1060; 1 Lewis, Eminent Domain (2d ed.), §243; 2 Elliott, Railroads, §461.

Appellee insists that the act of 1903, *supra,* authorizes lessees of street railroads, interurban street railroads, and suburban street railroads to exercise the power of eminent domain for the acquisition of lands upon which to construct lines for the transmission of electrical power.  Section 5468a, *supra,* provides: "That any street railroad company heretofore or hereafter organized under the laws of the State of Indiana, and desiring to construct or acquire, or having heretofore constructed or acquired any street railroad, interurban street railroad, or surburban street railroad, shall, in addition to the rights, privileges and powers already given and granted by law to street railroad companies, possess the general powers and be subjected to the liabilities and restrictions expressed in the special powers following: * * * Third.  To purchase, or by voluntary grants and donations, or by the special proceedings hereinafter provided, receive, acquire and take * * * hold and use all such lands and real estate and other property as may be necessary for the construction, maintenance and operation of its * . * * lines for transmission of electricity for heat, light and power for such companies or the public, which transmission lines may be on the line of said railroad or elsewhere, as such company may desire. * * * Sixth.  To maintain and operate, and to that end to construct, purchase, lease or otherwise acquire, and own or control street railroad, interurban street railroad or surburban street railroad lines and systems, constructed or in process of construction, or any part or parts

2.

thereof, and property appertaining thereto or to be used in connection therewith.''

The solution of the question turns upon the construction of the word ''acquire'' as used in this act. The word in its primary use doubtless means to get as owner, but in its broader sense means to obtain in any manner. In subdivision six of the first section of the act, we find the terms ''construct, purchase, lease or otherwise acquire'' used as words *ejusdem generis*. It thus appears that leasing was regarded by the legislature as a species of acquisition of railway property within the purview of this statute. We recognize the principle that statutes conferring the power of eminent domain are to be strictly construed, and yet, taking the whole statute into consideration, we are of the opinion that it was the intent of the legislature in passing the act in question to confer this power upon lessees of street and interurban railroads. The appellee is shown to be the lessee of one of such roads for a term of 999 years, and had a right to exercise the power of eminent domain to acquire property for use in connection with its leased line.

It is further contended that appellee has no power to appropriate land for a use not appurtenant to its right of way, or to construct a transmission line on a route disconnected from such way. We have already seen that, under our statute, appellee has the power to condemn land for a transmission line appurtenant to its leased road, and the act expressly provides that such line may be on the line of road, or elsewhere, as the company, may desire. It appears both from the averments of the complaint and the evidence that the proposed transmission line is to be used to transmit electricity for the purpose of supplying the light and power used in operating an interurban railroad between the cities of Indianapolis and Greensburg, and it is accordingly clear that appellee had the right to exercise the power of eminent domain for the use sought.

It is urged that appellee's complaint does not aver an intended public use of appellant's land, and that it has no right to condemn except for a use exclusively public.

5.   The legislature authorized the taking of lands for the use declared in appellee's complaint, and from this fact a presumption in favor of its public character arises. The courts must determine whether a particular use is a public use, but they will not decline to acknowledge an evident public use to be such merely because of an incidental private advantage, or overthrow the legislative declaration, unless it is manifest that the proposed use does not imply a possession or occupation of the land by the public at large or by a public agency, or a right in the general public to its enjoyment.   The expediency of authorizing the taking of lands for a transmission line upon a route situated, as the proposed line will be, with reference to the railroad to be operated, was for the legislature, and, under the facts shown, we have no difficulty in holding the intended use to be public, within the meaning of the law.   *Heick* v. *Voight* (1887), 110 Ind. 279, 284; *Cincinnati, etc., R. Co.* v. *City of Anderson* (1894), 139 Ind. 490, 47 Am. St. 285; *Stoy* v. *Indiana, etc., Power Co.* (1906), 166 Ind. 316; *Rockingham, etc., Power Co.* v. *Hobbs* (1904), 72 N. H. 531, 58 Atl. 46, 66 L. R. A. 581; 1 Lewis, Eminent Domain, §§158, 163, 170, 172.

Appellant's objections three to eight, inclusive, challenged the complaint for failure to state the location, general route, width, termini and specific description of lands to be

6.   appropriated.   The act of 1905 (Acts 1905, p. 59, §2, §930 Burns 1908) provides that where a right of way is sought the complaint must state the location, general route, width and termini thereof, and a specific description of each piece of land to be taken.   The complaint in this case averred that appellant owned a quarter section, particularly described; that appellee desired to construct, maintain and operate its transmission line, for the use stated, on and over

said tract by placing twenty-four poles, 115 feet apart, across the same from the west side to the east side thereof; that said poles are to be placed within six and one-half feet of the fence on the north side of the right of way of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, through said land, on a strip of land six and one-half feet wide, running in a diagonal manner through said quarter section on the north side of and parallel with and immediately adjoining the right of way of said Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, as now located through said land; that the amount of land actually taken and occupied by said poles is not to exceed forty square feet, and is not to interfere with the cultivation of said land by the appellant, excepting said forty square feet occupied by said poles.

The strip to be appropriated is clearly shown to extend across appellant's entire tract in an easterly and westerly direction, and to be six and one-half feet in width, lying immediately north of, and adjoining, the right of way of the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, as now located through said land. This description meets all the requirements of the statute and is sufficient.

It is contended also that the act of February 26, 1903 (Acts 1903, p. 92, §§5468a-5468c Burns 1905), is in violation of the state and federal Constitutions, because (1) it embraces more than one subject, (2) the subject in question is not within the title, and (3) it authorizes the taking of private property for private use. The title of the act challenged is as follows: "An act to amend sections one, four, and five of an act entitled 'An act concerning street railroad companies, granting additional rights and powers therein specified and matters relating thereto, and declaring an emergency,' approved March 11, 1901, and declaring an emergency."

Article 4, §19, of the state Constitution requires that "every act shall embrace but one subject and matters prop-

erly connected therewith; which subject shall be expressed in the title." One of the purposes of this provision was to prevent the combining of two or more unrelated subjects in the same act, and thereby compelling support of obnoxious provisions in order to secure meritorious legislation desired. The word "subject," as used in this section of the Constitution, refers to the thing about which the legislation is had, and the word "matters" includes subordinate and incidental things relating to such general subject. *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190.

The general subject of the legislation in question is street railroad companies, and the provision giving power to acquire necessary ground for the construction of lines for the transmission of electricity for heat, light and power is embraced within, germane and closely related to, the general subject of the act, and does not subject the statute to the charge of embracing two or more subjects. It is clear from the preceding statement that the subject of acquiring transmission lines is embraced within the title of the act. "The courts will not resort to a critical construction of the title in order to hold a statute unconstitutional. On the contrary the language of the title is in all cases given a liberal interpretation, and the largest scope accorded to the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act." 26 Am. and Eng. Ency. Law (2d ed.), 583. See, also, *Hargis* v. *Board, etc.* (1905), 165 Ind. 194. We have already seen that the taking of appellant's lands for the purpose declared is for a public use, and the charge that the statute authorizes a taking for a private use is not sustained. The constitutional objections to this statute urged by appellant's counsel are not tenable, and we cannot hold the act invalid upon any of the grounds stated.

The use of the words interurban and suburban in the act does not strengthen appellant's argument, since the right and power to construct, own and operate such roads have been given by appropriate legislation to street railroad companies.

11.

It was averred, in the twelfth objection to the complaint, that the transmission of electricity at a high voltage over such lines would, *per se,* be a nuisance. The law authorizes the construction and maintenance of lines for the transmission of electricity for the purposes stated in appellee's complaint, and the rule is quite well settled, and abundantly supported by reason and authority, that a lawful business or erection is never a nuisance *per se.* 21 Am. and Eng. Ency. Law (2d ed.), 684, and cases cited in note 6.

12.

The landowner may recover in this proceeding all damages which he will sustain on account of the lands taken, and resulting from the proper construction and operation of the transmission line thereon. If the line shall be improperly constructed or negligently operated, and from such causes becomes a nuisance in fact or occasions unnecessarily any wrongful injuries in the future, full redress may be had through an appropriate action.

13.

14.

We find no error in the proceedings of record, and the order overruling appellant's objections and appointing appraisers is therefore affirmed.