## STATE OF INDIANA *v.* CLOSSER.

[No. 22,161. Filed November 26, 1912. Rehearing denied February 11, 1913.]

1. STATUTES.—*Subjects and Title.—Sale of Food.*—The act of March 6, 1911 (Acts 1911 p. 605), amendatory of the act of March 4, 1907 (Acts 1907 p. 153), and prohibiting the sale of "milk which contains visible dirt", is not in violation of article 4 of the Constitution, providing that "every act shall embrace but one subject and matters properly connected therewith, which subjects shall be expressed in the title", since the provision of the amendatory act is germane to the general subject of legislation disclosed by the title of the amended act, which had for its object the protection of the people against impure and unwholesome food. pp. 234, 236.

2. STATUTES.—*Subjects and Title.—Amendment.*—New matter which, if it had been a part of the original act, would have been embraced in the subject expressed in the title, may be subsequently made a part of the act by amendment. p. 234.

3. STATUTES.—*Subjects and Title.—Object of Constitutional Requirement.*—The object of the provision of article 4 of the Constitution that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title", was to stop the practice of embracing in the same enactment incongruous matters unrelated to each other or to the subject of the legislation specified in the title, by which measures were often adopted without attracting attention and without general consideration. p. 234.

4. STATUTES.—*Subjects and Title.—Constitutional Requirement.—Construction.*—While the courts, in all cases falling clearly within the evils intended to be remedied, strictly enforce the provision of article 4 of the Constitution that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title", they will, in cases not clearly within the mischiefs, construe it liberally to facilitate proper legislation. p. 235.

5. STATUTES.—*Title.—Construction.*—The title of an act will receive a liberal construction, where necessary to sustain the legislative

intent, and the largest scope will be accorded to the words employed, to bring within the purview of the title all the provisions of the act.  p. 235.

6.  STATUTES.—*Title.—Construction.—Reference to Body of Act.*— The court must look to the body of an act in the interpretation of its title, and to the title in construing the body; and when it appears from both that all the provisions of the act are fairly referable to one general subject, and that subject is clearly expressed in the title, the act is not in conflict with the provisions of article 4 of the Constitution that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title."  p. 235.

7.  STATUTES.—*Subjects and Title.—Expression of Subject-Matter in Detail.*—It is not essential that the general subject of an act shall be stated in the title in so many words, but it is sufficient if the general subject is clearly disclosed or readily inferred from the details expressed.  p. 236.

8.  FOOD.—*Regulations.—Construction.*—The lawmaking power is vested with a broad discretion, in the enactment of police regulations with reference to the food supply of the people to determine what is necessary to protect consumers against adulterated, impure and unwholesome food, and the courts will sustain such regulations without any attempt to limit them by construction. p. 237.

9.  FOOD.—*Prosecution for Sale of Milk Containing Visible Dirt.— Affidavit.—Sufficiency.*—In a prosecution under the act of March 6, 1911 (Acts 1911 p. 605, §1) denouncing as unlawful the sale, keeping for sale, etc., of "milk which contains visible dirt," an affidavit charging the sale of milk containing visible dirt, which followed the language of the statute and charged that defendant's act was unlawful, was sufficient without charging that such milk was intended to be used for food.  (*Schmidt* v. *State* [1881], 78 Ind. 41, overruled.)  p. 238.

10.  FOOD.—*Prosecution for Sale of Milk Containing Visible Dirt.— Affidavit.—Charge of "Unlawful" Act.*—In an affidavit, in a prosecution under Acts 1911 p. 605, §1, for selling milk which contained visible dirt, the use of the word "unlawfully" in characterizing the defendant's act precludes all legal excuse for the offense, so that the affidavit is sufficient even under a construction limiting the prohibition of the statute to sales for food.  p. 238.

11.  FOOD.—*Prosecution for Sale of Milk Containing Visible Dirt.— Affidavit.—Sufficiency.—Matters of Defense.*—An affidavit in a prosecution under Acts 1911 p. 605 §1, for selling milk which contained visible dirt, need not negative the sale under circumstances or for purposes which might have made the same lawful, since such would be matter of defense which defendant could

State v. Closser—179 Ind. 230.

show under a plea of not guilty. (*Schmidt* v. *State* [1881], 78 Ind. 41, overruled.) p. 238.

12. Food.—*Prosecution for Sale of Milk Containing Visible Dirt.— Affidavit.—Sufficiency.—"Visible".—"Dirt".*—An affidavit in a prosecution under Acts 1911 p. 605, §1, for selling milk which contained visible dirt, is not insufficient on the theory that the statute fixes no standard by which visible dirt can be determined and that therefore it is indefinite and incapable of enforcement, as the term "visible dirt" has a common and specific meaning; "visible" meaning that which is capable of being seen, and "dirt" meaning any foul or filthy substance, or whatever, adhering to anything, renders it foul, unclean or offensive. p. 239.

13. Food.—*Prosecution for Sale of Milk Containing Visible Dirt.— Affidavit.—Sufficiency.*—An affidavit charging a violation of Acts 1911 p. 605, §1, prohibiting the sale of milk which contains visible dirt, need not specify the particular kind of dirt contained in the milk. p. 239.

From Laporte Circuit Court; *James F. Gallaher*, Judge.

Prosecution by the State of Indiana against Louis F. Closser. From a judgment quashing the affidavit, the State appeals. *Reversed.*

*Thomas M. Honan*, Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough*, for the State.

*Frank E. Osborn, W. A. McVey* and *Lee L. Osborn*, for appellee.

Cox, J.—This is an appeal by the State from the action of the lower court in sustaining the appellee's motion to quash an affidavit against him which sought to charge appellee with a violation of §1 of the act approved March 6, 1911 (Acts 1911 p. 605). The affidavit, omitting the caption and signature, reads as follows:

"John T. Willett, being duly sworn upon his oath, says that on the seventh day of September, 1911, at the county of Laporte and State of Indiana, one, Louis F. Closser, did then and there unlawfully, by his servant and agent, Hugh Closser, sell to one, John T. Willett, one pint of milk, at and for the price of four cents, which said milk did then and there contain visible dirt, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

The motion to quash stated as a ground that the facts stated in the affidavit did not constitute a public offense and on that ground it was sustained.     The act in question is amendatory of the act of March 4, 1907 (Acts 1907 p. 153, §7638 Burns 1908), which was entitled, "An Act forbidding the manufacture, sale or offering for sale of any adulterated or misbranded foods or drugs, defining foods and drugs, stating wherein adulteration and misbranding of foods and drugs consist," etc.   Section 1 of the act of 1911 purports to amend §3 of the former act and, omitting the enacting clause, it reads as follows: "That no person either by himself, his servant or agent, or as the servant or agent of another person, shall sell, exchange or deliver, or have in his custody or possession with intent to sell, exchange or deliver, expose or offer for sale or exchange, adulterated milk or milk to which water or any foreign substance has been added, or milk produced by sick or diseased cows, or milk from which the cream or a part thereof has been removed, or milk which is not of standard quality, or milk collected and kept or handled under conditions which are not cleanly and sanitary, or milk which contains visible dirt, or milk which contains less than eight and one-half per cent. of milk solids exclusive of fat and 3.25 per cent. of milk fat or milk which contains any added color or preservative, or as pasteurized milk, milk which has not been subjected to a temperature of at least 145 degrees Fahrenheit for thirty minutes or 165 degrees Fahrenheit for thirty seconds: *Provided, however,* That this section shall not be construed to prohibit the sale of skim milk when such skim milk is [sold] as [and] plainly labelled 'skim milk.'" It will be seen that this section makes numerous things unlawful when done in relation to milk, which under §1 of the amended act is included in the definition there given of food.   Section 10 of the amended act (Acts 1907 p. 153, §7647 Burns 1908) provides a penalty for violating any of the provisions of the act. Section 3 as amended by §1 of the act of 1911 prohibits

and makes unlawful the sale of "milk which contains visible dirt." This provision was not a part of the original act but was added as one of the many several things prohibited and denounced as unlawful by it.

In support of the action of the trial court in sustaining the motion to quash the affidavit, counsel for appellee first contend that the prohibition of the sale of "milk

1. which contains visible dirt" is a subject not embraced in the title of the act and that therefore this provision of the act of 1911 is void, because, it is contended, it is in violation of §19, article 4 of the Constitution of the State which provides that, "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The pure food act of 1899 (Acts 1899 p. 189, §2157a Burns 1901), the forerunner of the act of 1907, had a similar title and it was attacked in this court by the charge that its title was multifarious and for that reason in violation of the above stated constitutional provision. That attack failed. *Isenhour* v. *State* (1901), 157 Ind. 517, 62 N. E. 40, 87 Am. St. 228.

If the provision in the act of 1911 prohibiting and making unlawful the sale of milk containing visible dirt covered matter which was embraced within, or properly connected with the subject expressed in the title of the original act of 1907, it is not open to the objection urged, for the

2. rule is that new matter which, if it had been a part of the original act would have been embraced in the subject expressed in the title, may be subsequently made a part of the act by amendment. *McCleary* v. *Babcock* (1907), 169 Ind. 228, 238, 82 N. E. 453, and cases there cited.

The object of the constitutional provision involved was to stop the practice of legislative bodies, unrestricted by such a provision, of embracing in the same bill incongru-

3. ous matters unrelated to each other or to the subject of legislation specified in the title, by which measures were often adopted without attracting attention and without

general consideration. 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §111. *Robinson* v. *Skipworth* (1864), 23 Ind. 311; *Grubbs* v. *State* (1865), 24 Ind. 295; *Henderson* v. *London, etc., Ins. Co.* (1893), 135 Ind. 23, 34 N. E. 565, 20 L. R. A. 827, 41 Am. St. 410; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313; *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214, 81 N. E. 657.

The courts with great unanimity strictly enforce the provision in all cases falling clearly within the evils intended to be remedied by it. On the other hand, in cases not

4.    clearly within the mischiefs, they construe it liberally to give convenient and necessary freedom, so far as is compatible with the remedial measure to the lawmaking power. To facilitate proper legislation, it will not be interpreted in a strict, narrow or technical sense, but reasonably. 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §115; *State, ex rel.,* v. *Board, etc.* (1866), 26 Ind. 522; *Lewis* v. *State* (1897), 148 Ind. 346, 47 N. E. 675; *Hargis* v. *Board, etc.* (1905), 165 Ind. 194, 73 N. E. 915; *Board, etc.,* v. *Albright* (1907), 168 Ind. 564, 81 N. E. 578; *Mull* v. *Indianapolis, etc., Traction Co., supra.*

It is also the settled rule that the title of an act is to receive a liberal construction if necessary to sustain the legislative intent. A critical construction will not be made

5.    of the title to hold a statute unconstitutional, but on the contrary the language used is in all cases given a liberal interpretation and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act. *Hargis* v. *Board, etc., supra; Board, etc.,* v. *Albright, supra; State, ex rel.,* v. *Bartholomew* (1911), 176 Ind. 182, 95 N. E. 417, and cases there cited.

This court has also approved the following pertinent rule:
        "In the interpretation of the title we must look to the

6.    body of the act, and in construing the body we must look to the title; and if it appears from both that all

the provisions of the act are fairly referable to one general subject, and that subject is clearly expressed in the title, the act is valid." *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 168, 74 N. E. 985. See, also, *Board, etc.,* v. *Albright, supra,* and 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §§127, 131.

It has been decided by this court that it is not essential that the general subject of an act shall be stated in the title in so many words. It is quite permissible to use the details of the title, where available, to grasp the general subject to which the act relates. *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100, 106, 55 N. E. 751, 57 N. E. 710; *Central Union Tel. Co.* v. *Fehring* (1896), 146 Ind. 189, 45 N. E. 64; *Board, etc.,* v. *Albright, supra.* The rule is well stated in a text-book of standard authority: "The subject of an act may be expressed generally in the title, or spelled out from details, and occasionally from details which are independent and unconnected except through some general subject as *cousins german* are related through a common ancestor. According to the authorities the general subject need not appear in the title, if it is clearly disclosed or readily inferred from the details expressed." 1 Lewis' Sutherland, Stat. Constr. (2d ed.) §134.

Guided by these rules it becomes manifest that, so far as the act has relation to the case under consideration it involves the general subject of the sale of food; and its object, or the beneficial purpose intended by the legislature to accomplish is to secure to consumers pure and wholesome food. This general subject, while not stated in express terms, we think is clearly disclosed and to be readily inferred from the details of the title. With this view of the title the conclusion must follow that it is sufficiently broad to cover the prohibition of the sale of milk containing visible dirt. But if the contention of counsel for appellee that, following the decision of this court in *Isenhour* v. *State, supra,* the subject expressed in the title of the act is the pro-

tection of the people against adulterations, the rules of construction and interpretation we have stated would require us to hold the provision of the act under consideration to be germane to the subject expressed. It is not within the mischief which this provision of the Constitution was intended to remedy. The title gives notice that the adulteration and sale of food, with a broader definition of the word adulteration than the ordinary meaning carries, will be denounced under penalty. And it is clear that it was the intention of the legislature to protect the people against impure and unwholesome food. It is not denied by counsel that to the extent that "visible dirt" might be an adulterant of milk it is within the title and that being so the provision must be upheld. The contention of counsel that in a limited and narrow sense visible dirt might not be considered an adulterant cannot take the provision out of the title and overthrow it. We think the intention of the legislature to declare milk containing visible dirt adulterated milk is manifest and the provision in question germane to the general subject of the legislation disclosed by the title.

The provision upon which the affidavit is based prohibits, by its terms, any sale of milk which contains visible dirt and it is earnestly contended by counsel for appellee that unless the provision is limited by judicial construction to sales for food it must be declared arbitrary and confiscatory of property and therefore in violation of constitutional rights. Upon this foundation they assert that the affidavit is bad for not alleging that the milk was sold for food. Such 8. laws as that before us are police regulations of the food supply of the people, and the lawmaking power is vested with a broad discretion to determine what is necessary to secure to the consumers cleanliness, wholesomeness and purity in so important and easily adulterated or tainted a food as milk. The courts with practical unanimity have sustained such regulations without any attempt at limiting them by construction whether in the form of a state statute

or a municipal ordinance.   See Thornton, Pure Food and
Drugs, §27 *et seq.*, and the collection of cases and notes in
1 L. R. A. (N. S.) 918-936. But whether counsel are correct in their claim that such a limitation must be put upon the provision, it is not necessary to determine in passing upon the sufficiency of the affidavit. For the statute defines the offense and states specifically what acts shall constitute it; it is purely statutory and has no relation to the common law. In such case the rule is that it is a good charge if made in the language of the statute. Gillett, Crim. Law (2d ed.) §132a, and cases there cited. *State* v. *New* (1905), 165 Ind. 571, 76 N. E. 400; *State* v. *Bridgewater* (1908), 171 Ind. 1, 85 N. E. 715.

The affidavit before us charges that appellee did unlawfully sell milk which did then and there contain visible dirt. The language of the statute is followed and it is charged that appellee's act was unlawful. The use of the word "unlawfully" precludes all legal excuse for the offense and even if the provision must be construed to prohibit only sales for food it negatives a sale for any other purpose. 1 Bishop, Crim. Proc. §503; *King* v. *Burnett* (1815), 4 M. & S. *272, *274; *State* v. *Maddox* (1882), 85 Ind. 585; *State* v. *Dupies* (1883), 91 Ind. 233. See, also, *Lipschitz* v. *State* (1912), 176 Ind. 673, 96 N. E. 945. The facts averred make a case within the statute and if there were any facts constituting a defense it was for the appellee to show them. This he might do under a plea of not guilty. If he sold the milk under any circumstances or for any purposes which might make the sale lawful, these are matters of defense and need not be anticipated and negatived in the affidavit. Gillett, Crim. Law (2d ed.) §§125, 132a; 1 Bishop, New Crim. Proc. §326; *Payne* v. *State* (1881), 74 Ind. 203; *Ferner* v. *State* (1898), 151 Ind. 247, 51 N. E. 360; *State* v. *Bridgewater, supra,* and cases cited. Counsel claim that in the case of *Schmidt* v. *State* (1881), 78 Ind. 41, this court has determined this ques-

tion favorably to their contention. The decision of that case was weakened by a strong dissenting opinion by two of the five members of the court and we know of no case where the decision has been followed on the identical question involved. The decision in *State* v. *Bridgewater, supra,* is practically a denial of the authority of the opinion of the majority of the court in *Schmidt* v. *State, supra.* Conditions have made necessary much legislation for the protection of the people against adulterated, impure and unwholesome food and it is not for the courts to require technical niceties in charging offenses so created. That an affidavit or indictment for the violation of similar statutes need not aver that the sale was for food or for human food has been decided. *State* v. *Kelly* (1896), 54 Ohio St. 166, 43 N. E. 163; *State, ex rel.,* v. *Smith* (1903), 69 Ohio St. 196, 68 N. E. 1044; *Lansing* v. *State* (1905), 73 Neb. 124, 126, 102 N. W. 254.

We do not think that there is merit in the contention that the affidavit is bad for the further reason advanced that the provision of the statute fixes no standard by which visible dirt can be determined and that therefore it is indefinite and incapable of enforcement. The term "visible dirt" has a common and specific meaning. The Century Dictionary defines "visible" to mean "perceivable by the eye; capable of being seen." While "dirt" is defined as "any foul or filthy substance; whatever adhering to anything renders it foul, unclean or offensive." Nor do we think that the affidavit should have been more specific as to the particular kind of dirt contained in the milk.

Concluding that the court erred in sustaining appellee's motion to quash, the judgment is reversed with instructions to overrule the motion and for further proceedings.

NOTE.—Reported in 99 N. E. 1057. See, also, under (1) 36 Cyc. 1029; (3, 4, 5) 36 Cyc. 1017; (6) 36 Cyc. 1133; (7) 36 Cyc. 1028; (8) 19 Cyc. 1085; (9) 19 Cyc. 1098; (10) 19 Cyc. 1100; (11) 22 Cyc. 304. As to the sufficiency of the title of a statute if describing the body generally rather than in detail, see 64 Am. St. 74.

As to an amendatory statute and whether its title need do more than refer aptly to the original enactment, see 86 Am. St. 268. As to the rules generally for construing statutes see 12 Am. St. 827. As to the criminal liability of one selling noxious and unsound food, see 73 Am. Dec. 165. As to unwholesome food and the manufacturer's liability to the consumer, see 111 Am. St. 713. As to the constitutionality of statutes or ordinances regulating the sale of milk, see 4 Ann. Cas. 119; 18 Ann. Cas. 321.