OLIVER, AUDITOR, *v.* STATE, EX REL. LAHR.

[No. 24,069. Filed July 2, 1924.]

1. STATUTES.—*Subjects and Title.—Sufficiency.—Matters Embraced Therein.*—When the title of an act shall "express" a "subject," any provisions of the act which relate to that subject, or to "matters properly connected therewith," are within the title under Art. 4, §19 Constitution. p. 68.

2. STATUTES.—*Subjects and Titles.—Determination of Subject.— Consideration of Title and Body of Act.*—In determining what is the general subject of an act the court will look from the title to the body of the act, and from the body to the title, and from a consideration of all the provisions will determine whether or not the provisions are all referable to one general subject expressed in the title and matters properly connected therewith.  p. 68.

3. STATUTES.—*Subjects and Title.—Sufficiency.*—The title of an act need not contain an epitome of the contents of the act, but only express a subject to which, with matters incidental thereto, the provisions of the act must be limited.  p. 71.

4. STATUTES.—*Subjects and Title.—Salaries of Judges.—Sufficiency to Include.*—The title of an act "fixing the salaries of circuit, superior, criminal and probate judges" *held* broad enough to include the judge of the juvenile court, since prosecution of adult persons in this court must be made in conformity with the Criminal Code of Procedure (Myers, C. J., Willoughby, J., dissent).  p. 72.

From Marion Superior Court (A13,854); *W. W. Thornton,* Judge.

Action by State of Indiana in relation of Frank J. Lahr against William G. Oliver, Auditor of State. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*U. S. Lesh,* Attorney-General, and *Edward M. White,* Assistant Attorney-General, for appellant.

*Emsley W. Johnson,* for appellee.

EWBANK, J.—This was an action by appellee's relator to compel the auditor of state, by mandamus, to issue warrants for the amount of salary as judge of the juvenile court of Marion county, Indiana, which he alleged was due him under the provisions of chapter 89, Acts 1921 p. 187, §1650a *et seq.* Burns' Supp. 1921.

Before that act was passed his salary had been paid only from the treasury of the county (§1630 Burns 1914, Acts 1913 p. 852) and the auditor of state denied the validity of a provision in the new act that "The salary of each judge of the  *  *  *  juvenile courts of this

state shall be $4,200 annually, payable monthly out of the state treasury," insisting that it was not embraced by the title of the act. Appellant's demurrer to relator's complaint was overruled and upon his refusal to answer further a judgment commanding him to draw the warrants was rendered, from which this appeal was taken. Whether or not the title of said act (Acts 1921 p. 187, *supra*) is comprehensive enough to embrace the language above quoted is the only question presented for decision.

The italics in the language hereafter quoted are ours. The title of the act was as follows: "An act fixing the salaries of *circuit,* superior, *criminal* and probate *judges,* providing traveling expenses in certain cases and for the payment of such salaries and traveling expenses, and repealing all laws and parts of laws in conflict therewith." It did not mention *courts,* but only the *judges.* The first section of the act reads as follows: "Sec. 1. That the salary of each judge of the circuit, superior, criminal, probate and *juvenile* courts of this state shall be $4,200 annually, payable monthly out of the state treasury. Provided, that in all judicial districts of this state, composed of one county, whether for circuit, superior, criminal, probate or *juvenile* courts, containing any city which had a population of more than 30,000, as shown by the last preceding United States census, or which contain cities whose aggregate population was more than 60,000 as shown by such census, whenever twenty or more resident freeholders of the county in which such city is, or such cities, are situated, shall by their petition filed with the board of commissioners of such county, represent that the annual salary of the judge of such circuit, superior, criminal, probate or *juvenile* court, as otherwise provided by law, is not an adequate compensation for the services of such judge or judges, and should be increased in a sum

to be specified in such petition, then it shall be the duty of the board of commissioners of such county, in open session, without delay, at any term of such board, to consider such petition and hear the evidence thereon, and thereupon such board of commissioners may, by entry of record, fix and allow a certain sum as an addition to or increase of the annual salary of the judge or judges of such circuit, superior, criminal, probate or *juvenile* court, but in no event in excess of the sum of $2,800 or in excess of the sum specified in such petition; no appropriation by the county council shall be required to authorize such allowance or the payment thereof." Acts 1921 p. 187.

It will be observed that "juvenile courts" are mentioned four times in the body of the act, which expressly enacts in favor of judges of "juvenile courts" all of its provisions relating to the salaries of judges of other courts. But that the title mentions only "circuit, superior, criminal and probate judges," without mentioning the legal names of any courts at all.

The constitution of Indiana provides that "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." Art. 4, §19 Constitution, §115 Burns 1914. This provision of the constitution has been held to render many acts and parts of acts unconstitutional, and we cite a number of cases which illustrate the construction that has been given to it by the court in so holding. *State* v. *Wilson* (1856), 7 Ind. 516; *State* v. *Bowers* (1860), 14 Ind. 195; *State* v. *Young* (1874), 47 Ind. 150; *Henderson, Aud.,* v. *London, etc., Co.* (1893), 135 Ind. 23, 34 N. E. 265, 41 Am. St. 410; *State, ex rel.,* v. *Commercial Ins. Co.* (1902), 158 Ind. 680, 64 N. E. 466; *State, ex rel.,* v. *Board, etc.* (1906), 166 Ind. 162, 76 N. E. 986; *Indianapolis, etc., Traction Co.* v. *Brennan* (1910), 174 Ind. 1,

87 N. E. 215; *Morgan* v. *State* (1913), 179 Ind. 300, 101 N. E. 6.   On the other hand, it is uniformly held that when a title shall "express" a "subject," any provisions of the act which relate to that subject, or to "matters properly connected therewith," are within such title. And in determining what is the general subject to which the act relates the court will look from the title to the body of the act and from the body of the act to the title, and from a consideration of all the provisions of both, will determine whether or not the provisions are all fairly referable to one general subject expressed in the title, and matters properly connected therewith. *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 168, 74 N. E. 985; *State, ex rel.,* v. *Bartholomew* (1911), 176 Ind. 182, 187, 95 N. E. 417; *State* v. *Closser* (1912), 179 Ind. 230, 235, 99 N. E. 1057; *Wright* v. *House* (1919), 188 Ind. 247, 259, 121 N. E. 433; 1 Lewis, Sutherland Statutory Construction (2d ed.) §131.

Thus where it fairly appeared from a consideration of the title and body of the act that both related to the general subject of "coal mines," a section giving a right of action for the death of an employe in a coal mine occasioned by a violation of the act was held to be within the title, as properly connected with such general subject, although the title mentioned only the weighing of coal, the ventilation of mines, the safety of employes, the protection of persons and property injured, the prohibition of work by boys and females in mines, and providing penalties for violations of its provisions. *Maule Coal Co.* v. *Partenheimer, Admr.* (1899), 155 Ind. 100, 105, 106, 55 N. E. 751.

And where the general subject was declaring and enforcing duties of telegraph companies, a provision that any person aggrieved by the negligent failure to deliver a telegram could recover the sum of $100 in a civil action was held to be properly connected with that subject

and within the title, although the several clauses of the title were specific, and mentioned only "prescribing certain duties" of such companies, "prohibiting discrimination between patrons," and "providing penalties therefor." *Western Union Tel. Co.* v. *Braxtan, supra.*

And where the general subject was companies operating electric street railroads a provision authorizing such a company which was the lessee of an interurban railroad to condemn a right of way for transmission lines between cities to convey electricity was held to be properly connected therewith, and within a title which only expressed that subject by stating that the act was "concerning street railroad companies (and) granting additional rights and powers." *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214, 221, 81 N. E. 657.

The general subject of circuit courts was sufficiently expressed to authorize a provision for the specific matters enumerated, as being "properly connected" with such subject, where the title was not in general terms, but was "an act to divide the state into circuits for judicial purposes, fixing the time for holding courts therein, abolishing the court of common pleas and transferring the business thereof to the circuit courts, and providing for the election of judges and prosecuting attorneys in certain cases." *State, ex rel.,* v. *Tucker* (1874), 46 Ind. 355.

And where the general subject was protection against the sale of food that was not pure and wholesome, a provision making it a criminal offense to sell "milk which contains visible dirt" was "properly connected therewith," so as to be embraced by a title not general in its terms, but which recited that it was "An act forbidding the manufacture, sale or offering for sale of any adulterated or misbranded foods or drugs, defining foods and drugs, stating wherein adulteration and misbranding of foods and drugs consist, and defining the

duties of the state board of health in relation to foods and drugs, their inspection, purity and misbranding, regulating the slaughter of animals and their preparation for food, providing an appropriation for enforcement, providing for the appointment of a state food and drug commissioner, declaring penalties for the violation of the laws, rules and ordinances concerning foods and drugs." *State* v. *Closser, supra.*

And the general subject of the improvement of highways was sufficiently expressed to cover a provision in the body of the act authorizing the selection of roads to be improved by the State Highway Commission, where the title was merely "An act creating a state highway commission, providing for the construction, reconstruction, repair and control of public highways, and providing for co-operation with the federal government in the construction of rural post roads." *Wright* v. *House, supra.*

And the subject of the use by public utilities of highways, including the streets of cities and towns, was sufficiently expressed in the title to embrace a provision in the body of the act depriving the officers of cities and towns of all power to license the use of streets for such purposes, and transferring that power to the public service commission, where the title was, "An act concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana and conferring the powers of the railroad commission on the public service commission." *Farmers', etc., Tel. Co.* v. *Boswell Tel. Co.* (1918), 187 Ind. 371, 376, 119 N. E. 513.

And it has been decided many times that the title of an act need not contain an epitome of the contents of the act, but need only express a subject to

3. which, with matters incidental thereto, the provisions of the act must be limited. *Baltimore,*

*etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 232, 68 N. E. 266; *State* v. *Paris* (1913), 179 Ind. 446, 451, 101 N. E. 497.

The general subject of the act under consideration in the case at bar is the salaries of judges of those courts which exercise superior original jurisdiction; in other words, which exercise the jurisdiction, or some part of it, conferred by law upon the circuit courts, generally throughout the state. But the question arises whether or not the title embraces all or only part of that general subject. In all but a dozen or so of the counties the judge of the circuit court exercises all the jurisdiction which, in the few counties where other courts exist, is vested in circuit, superior, criminal, probate and juvenile courts. §§1433, 1630 Burns 1914, §1314 R. S. 1881, Acts 1913 p. 852. In all the counties but four or five the circuit court has jurisdiction of all criminal cases, though in one or two others the superior court also has jurisdiction in such cases. §§1527, 1575 Burns 1914, §1604 Burns' Supp. 1921, Acts 1911 p. 170, Acts 1913 p. 33, Acts 1919 p. 748. And in all but one the judge of the circuit court is *ex officio* judge of the juvenile court.

The jurisdiction of the juvenile court, where a separate court exists, subject to some very slight exceptions, is limited to the trial of those accused of offenses against the criminal law, committed by or against children. §§1630 to 1649 Burns 1914, Acts 1903 p. 516, Acts 1907 p. 221, Acts 1905 p. 440, Acts 1913 p. 852; §§1641, 1648 Burns' Supp. 1921, Acts 1917 p. 341, amending corresponding sections in Burns 1914.

When an adult person is prosecuted in the juvenile court for a public offense against a child the accusation must be made in conformity with the Criminal

4. Code of Procedure. *Pease* v. *State* (1921), 74 Ind. App. 572, 129 N. E. 337; *Mayhew* v. *State*

(1920), 189 Ind. 545, 128 N. E. 599. And a person so prosecuted has the right, by filing a verified motion for a change of venue, to transfer the action to the criminal court of the county, if there be one, to be there tried. §1648 Burns 1914, Acts 1907 p. 266.

The question presented for decision, then, is whether the reference in the title of this act "fixing the salaries of circuit, superior, criminal and probate judges" is broad enough to include the salary of the judge of a court which exercises jurisdiction in criminal matters vested in the circuit courts of all counties in the state but one, and shared by his court with the criminal court in that one county, if the title be accorded the meaning which it bears when construed in connection with the body of the act, wherein it is clearly provided, in express terms, that his salary shall be fixed, the same as the salaries of judges of all other courts exercising like jurisdiction. We think that this question must be answered in the affirmative. The title does not name any courts at all, but mentions only judges. In referring to them it uses words which indicate the courts served by them only in the most general terms, and which are as applicable to the jurisdiction exercised by some of those courts as to their official names. A reference to the judges of courts exercising a superior jurisdiction in criminal cases obviously would embrace the judge of the juvenile court, and the body of the act expressly declares a legislative intent that the act shall apply to him. Construing the title and body of the act together it is by no means clear that the "criminal" judges referred to do not include the judge of the juvenile court, as one exercising criminal jurisdiction. And to doubt whether or not a statute is unconstitutional is to decide in favor of its validity. *Henderson, Aud.,* v. *State, ex rel.* (1894), 137 Ind. 552, 556, 36 N. E. 257;

*Carr* v. *State* (1911), 175 Ind. 241, 247, 93 N. E. 1071; *Ehle* v. *State, ex rel.* (1922), 191 Ind. 502, 133 N. E. 748.

The judgment is affirmed.

Myers, C. J., dissents.

Willoughby, J., dissents for the reason that the title to the act is restrictive and expressly excludes the judge of the juvenile court of Marion county from the benefits of the act.