HARRIET F. CARPENTER, RELATOR, v. CHARLES A. CORNISH ET AL.

Submitted November Term, 1911—Decided April 11, 1912.

1. Prior to the adoption of the constitution of 1776 of the State of New Jersey, women had no legal claim to vote.
2. No right to vote was conferred on females by the constitution of 1776.
3. Even though the act of 1797 permitted females to vote, it was subsequently repealed by the statute of 1807.

4. The act of 1807 and subsequent statutes excluding females from the right to vote are not in contravention of the constitution of 1776.

5. The act of 1844, calling for a constitutional convention and which excluded women from voting for delegates thereto, was neither in contravention of the letter nor of the spirit of the constitution of 1776.

6. The constitution of 1844 having been submitted to the vote of the people, in pursuance of the act of 1844, and adopted, is the fundamental law of this state until supplanted either by a new constitution adopted, as that was adopted, or by amendment in the manner therein provided.

On rule to show cause why a peremptory *mandamus* should not issue.

Before Justices TRENCHARD and KALISCH.

For the relator, *Mary Philbrook.*

The opinion of the court was delivered by

KALISCH, J. Harriet F. Carpenter seeks to obtain a writ of *mandamus,* to be directed to the members of the board of registry and elections of Passaic township, southern district, requiring her to register her name, that she may be qualified to vote.

It is admitted that her application came too late to enable her to vote at the last November election, but she insists that her application should receive consideration so as to qualify her, by having her name upon the list to vote at the primaries in September of this year.

This presents the question of the right of women, who are in other respects qualified as to citizenship and residence, to vote in New Jersey. It is clear that under the constitution of 1844 women cannot vote. The argument advanced by the relator, in behalf of the right of women to vote, notwithstanding the constitutional impediment, is that the constitution of New Jersey of 1776 gave to "all inhabitants" possessing certain qualifications the right to vote; that certain statutes relating to elections subsequently passed, including the laws of

1790, in referring to those persons who are entitled to the right of suffrage mentioned them as "he" and "she;" and that women voted extensively throughout the state, until 1807, when the first act was passed depriving women of the right to vote. That the statute of 1807, and the subsequent statutes passed in 1820 and 1838, depriving women of the right to vote are unconstitutional, and that the act of the legislature (*Pamph. L.* 1844, *p.* 111) provided for the election of delegates to the convention to frame a constitution, and excluding women from voting for such delegates, were also unconstitutional, in so far as it excluded women, and that therefore the provisions of the constitution of 1844 giving to every male citizen the right to vote cannot be held to exclude women, and that the election laws passed since the adoption of the constitution of 1844 are unconstitutional, in so far as they exclude women from the right to vote.

The premises upon which this argument rests are inaccurate and fallacious. There is nothing in the constitution of 1776 which confers on women the right to vote. The fourth clause of the constitution declares: "All inhabitants of this colony of full age, who are worth fifty pounds proclamation money, clear estate in the same, and have resided within the county in which they claim a vote for twelve months immediately preceding the election, shall be entitled to vote for representatives in council and assembly; and also for all other public officers that shall be elected by the people of the county at large."

The contention of the relator is that the term "all inhabitants" in this clause includes the female as well as the male sex. And it is from this constitutional declaration that it is insisted by the relator that women derive the constitutional right to vote.

A careful reading of the clause demonstrates that the framers of the constitution had in view a particular class of inhabitants and that the inference drawn by the relator from the use of the term "all inhabitants" cannot be justified when the context is considered.

It is of material significance that the constitutional provision after declaring "all inhabitants of this colony of full

age, who are worth fifty pounds proclamation money, clear estate in the same," is followed by this qualification: "and have resided within the county in which they claim a vote for twelve months immediately preceding the election, shall be entitled to vote," &c.

The plain and obvious meaning of this provision is that all inhabitants who are qualified as required by the constitutional provision and who have been legal voters before the adoption of the constitution, and who claim a vote in the county in which they reside, shall be entitled to vote in such county provided they have a residence therein for twelve months preceding the election. The term "all inhabitants" must be limited to those legally entitled to vote in this state before the adoption of the constitution and who have qualified under it. If it were not for this constitutional limitation referred to it might well have been maintained that the term "all inhabitants" included females of full age as well as males. In the absence of such a constitutional limitation there would have existed no good reason for excluding aliens, and negroes who were in a state of servitude, from exercising the elective franchise.

It is essential to observe that this constitutional provision is a simple declaration that those inhabitants of this state, who claimed a right to vote prior to the adoption of the constitution shall be entitled to vote, provided they are otherwise qualified, as prescribed therein. The words "claim a vote" must be understood to mean a lawful claim to vote, at the time of the adoption of the constitution. A fair reading of the constitutional clause makes it plain that it is an affirmance of a privilege which was enjoyed by a certain class of inhabitants at the time of its adoption, and which will more clearly appear by a reference to the laws pre-existing the adoption of the constitution. It was not intended to confer the right to vote on all inhabitants irrespective of their sex, condition or servitude. The constitution dealt with the legal voter as then known and understood, and it was not intended to create a new and additional class of voters. The constitutional clause must be construed in the light of the conditions which ex-

isted at the time it was framed and by contemporaneous leg-
islation. Due regard must also be had to the context in order
to ascertain whether the term "all inhabitants" was used in
a general or restrictive sense. It is manifest from the context
of the constitutional clause that the term "all inhabitants" was
used and intended to be understood in a restrictive sense, but
to what extent can only be determined when it is ascertained
what class of persons had a lawful claim to vote at the time
of its adoption. It does not appear that before the adoption
of this clause of the constitution women did exercise the right
of suffrage. No such right was conferred on them by the law
of the land. It appears conclusively that prior to the adop-
tion of the constitution of 1776 the right to vote was exercised
exclusively by the male inhabitants. *Grants & Conces. N. J.
(Leam. & Spi.)* 154, § III; *Allin. L., p. 6, ch. 10, § 1; p.
306, § 1; pp. 69, 70, §§ 1, 5.*

It thus appearing that the male sex was the class who exer-
cised the right and had a claim to vote from the earliest period
of legislation in this state up to the time of the adoption of
the constitution of 1776, leads us to the inevitable conclusion
that the use of the term "all inhabitants" in said constitution
did not confer on women the right to vote.

Since this right to vote claimed by the relator did not exist
prior to the constitution of 1776, and although females are
not by express terms of its provision excluded from exercising
the elective franchise, no right to exercise such franchise can
be predicated upon it. It must be conceded that it was the in-
tention of the framers of the constitution, in order to prevent
a chaotic condition in the government of this state, to keep
alive and in full force the laws which were in force at the time
of the adoption of the constitution, in so far as they were
consistent with the new form of government which had been
created and which were not altered by the constitution.

The twenty-first paragraph of the constitution of 1776
reads: "That all the laws of this province, contained in the
edition lately published by Mr. Allinson, shall be and remain
in full force until altered by the legislature of this colony
(such only excepted as are incompatible with this charter),

and shall be, according as heretofore, regarded in all respects by all civil officers, and others, the good people of this province."

We have been dealing with the law as it was prior to and stood at the time of the adoption of the constitution of 1776, in order to ascertain the true purport and meaning of the paragraph therein relating to the class of inhabitants who shall exercise the right to vote. The first pronouncement of the legislature upon that subject and which may be regarded as a contemporaneous exposition by the legislature of the meaning of the mooted clause of the constitution because it was the very first legislative act passed concerning the subject in this state after the colonies had achieved their independence, is the act of 1783. *Wils. L.* 346.

The seventh section of this act, on page 348, is in exactly the same language as that of the constitutional provision, with the exception that there is added thereto the following: "Except such as may be hereinafter excluded for offences committed against the state."

The eighth section provides: "That if any person's vote shall be objected against, it shall not be received until *he* shall have taken the oath of abjuration and allegiance prescribed by an act entitled 'An act for the security of the government of New Jersey, passed the nineteenth day of September, 1776,' " &c.

Not until 1790, fourteen years after the adoption of the constitution, do we find any material change in this constitutional provision. See *Blauv. L.* (*ed.* 1790) 672, § 11, and *Pat. L.* 1797, *pp.* 230, 231, §§ 9, 11.

The material changes of the constitutional provision are to be found in the eleventh section, which substitutes "all free inhabitants" for "all inhabitants" and omits the words "clear estate in the same" after the words "proclamation money," as contained in the original, and has added to it the following proviso: "And no person shall be entitled to vote in any other township or precinct than that in which *he* or *she* doth actually reside at the time of the election;" and the ninth section, which recites: "That every voter shall openly, and in

full view, deliver his or her ballot (which shall be a single written ticket) containing the names of the person or persons for whom *he* or *she* votes," &c.

It can hardly be claimed that section 11 of the act of 1790, and which was incorporated in the act of 1797, was in any sense contemporaneous legislation expounding the true meaning of the debated constitutional clause, when it is considered that the legislature, by omitting the words "clear estate in the same," contained in the constitution, after the words "proclamation money," must have deliberately designed, regardless of the constitutional provision, to give to those married women the right to vote who, though worth fifty pounds proclamation money, could not, by reason of their marital relation under the then existing state of the law relating to married women, have a clear estate therein.

It is very likely, as has been urged by counsel for the relator, that after the passage of the acts of 1790 and 1797, some women availed themselves of the privilege to vote, but after all it was nothing more than a privilege emanating from a legislative act, which a subsequent legislature had a right to repeal, and later did repeal.

As has been said, it is manifest that the constitutional clause does not in express terms exclude women from voting, yet it is to be inferred from a fair reading of it, and from the state of the law as it was before its adoption, and the construction given it by the act of 1783, that the right to vote was conferred only on the male inhabitants.

It was evidently due to the failure of the clause of the constitution to limit the right to vote, in express terms, to male inhabitants that gave rise to the uncertainty which existed in the public mind even after the passage of the acts of 1790 and 1797 as to whether women were entitled to vote. The history of subsequent legislation reveals that the legislative construction given to the constitutional provision by section 11, was challenged, and not generally acquiesced in.

In 1807, the legislature passed an act entitled "An act regulating the election of members of the legislative council and general assembly, sheriffs and coroners in this state, passed at

Trenton, the twenty-second day of February, one thousand seven hundred and ninety-seven," the preamble of which recites as follows: "Whereas doubts have been raised and great diversities in practice obtained throughout the state in regard to the admission of aliens, females and persons of color, or negroes, to vote in elections, as also in regard to the mode of ascertaining the qualification of voters in respect to estate. And whereas it is highly necessary to the safety, quiet, good order and dignity of the state to clear up the said doubts by an act of the representatives of the people, declaratory of the true sense and meaning of the constitution, and to ensure its just execution in these particulars, according to the intent of the framers thereof; therefore,

"Sec. 1. Be it enacted by the council and general assembly of this state, and it is hereby enacted by the authority of the same, That from and after the passing of this act, no person shall vote in any state or county election for officers in the government of the United States, or of this state, unless such person be a *free, white, male* citizen of the age of twenty-one years, worth fifty pounds proclamation money, clear estate," &c.

This act contains a repealer, repealing all conflicting sections therewith. *Bloomf. L.* 33.

It is conceded that from the time of the passage of the act of 1807, up to the adoption of the constitution of 1844, females did not claim any legal right to vote. The constitutionality of the act of 1807, which gave a settled meaning to the constitution of 1776, relating to the exercise of the right of suffrage, went unchallenged, and so remained for more than a century. But even if it were admitted that under the constitution of 1776, women were entitled to vote, and that subsequent legislation deprived them of that right, we are unable to perceive any foundation for the present application, since it appears that in 1844 the people of this state adopted a constitution which limited the right of suffrage to male citizens that had attained the age of twenty-one years. The attack upon the legislative act of 1844, which called for the constitutional convention and excluded women from the right to vote

for the delegates to that convention upon the ground that it is unconstitutional, is a result of the fallacy of the position of counsel for the relator, in assuming that such an act could only be justified by constitutional authority; but this is not so. It required no constitutional authority. It was the exercise of the sovereign power of the people. It provided, as a matter of course, that the constitution framed by the delegates should be submitted to the vote of the people. The constitution of 1844 was so submitted to the vote of the people. The constitution, therefore, rests for its validity upon the public will, and being adopted in that manner, is the fundamental law of the land until supplanted either by a new constitution adopted as that was adopted or by amendment in the manner therein provided.

The rule to show cause will be discharged.