BENNETT v. JACKSON, SECRETARY OF STATE ET AL.

[No. 23,330. Filed July 13, 1917. Rehearing denied October 3, 1917.]

1. CONSTITUTIONAL LAW.—*Judicial Powers.*—*Determination of Law.*—*Scope of Authority.*—*New Constitution.*—*Calling Convention.*—The Supreme Court has jurisdiction to determine the constitutionality of an act of the legislature providing for the calling of a constitutional convention. p. 536.

2. INJUNCTION.—*Grounds for Equitable Relief.*—*Expenditure of Public Money under Invalid Law.*—In an action by a taxpayer, for himself and in behalf of all the other taxpayers of the State, to enjoin the calling of a constitutional convention under an alleged invalid law, where it appears that defendant state officials intend to expend a large amount of public funds in complying with such law, a case for equitable relief is presented. p. 537.

3. CONSTITUTIONAL LAW.—*Power of Legislature.*—Within the field of legislation as fixed by §1, Art. 4, of the Constitution, the legislature is supreme, and its actions are circumscribed only by the terms of the state or federal Constitution. p. 538.

4. CONSTITUTIONAL LAW.—*Legislative Power.*—*Nature.*—*Source.*—The legislature has no inherent rights, its power being derived solely from the Constitution, and where an act of the legislature is outside of the particular field fixed by the Constitution and is not strictly legislative within the meaning of §1, Art. 4, thereof, a warrant for the passage of the law must be found, if not in the Constitution, directly from the people. p. 538.

5. CONSTITUTIONAL LAW.—*Amendment of Constitution.*—*Power of People.*—Under §1, Art. 1 of the Bill of Rights, providing that the people have, at all times, an indefeasible right to alter and reform their government, the people's power over constitutional amendments is supreme, subject only to the condition that a new form of constitution cannot be established without the approval of the general assembly; and, if no positive rule is provided by the fundamental law prescribing a method whereby the people and the legislature may concur in providing for a new constitution, a custom, if fully established, will prevail. p. 539.

6. CONSTITUTIONAL LAW.—*Revision of State Constitution.*—*Statute.*—*Validity.*—Where the question of calling a convention to frame a new state constitution was defeated when last submitted at the election held in 1914, the will of the people as expressed at such election was as binding on the general assem-

bly as a positive provision of the Constitution, so that the act of 1917, Acts 1917 p. 5, providing for a convention to revise the Constitution, is null and void as being in conflict with §1, Art. 1, of the Bill of Rights in that it takes away from the people the right to determine when they desire a change in the fundamental law. p. 539.

From Marion Superior Court (106,634); *W. W. Thornton,* Judge.

Action by Henry W. Bennett against Ed Jackson, as Secretary of State, and others. From the judgment rendered, plaintiff appeals. *Reversed.*

*Charles Martindale, Emory B. Sellers, Samuel Parker* and *Crane & McCabe,* for appellant.

*Ele Stansbury,* Attorney-General, *U. Z. Wiley, Abram Simmons, Mrs. Edward F. White* and *Stuart, Hammond & Stuart,* for appellees.

ERWIN, C. J.—Appellant, as plaintiff below, brought this suit for himself and also all electors and all the taxpayers of the State against appellee Jackson, the sheriff of Marion county, the board of commissioners of the county of Marion, the judge of the Marion Circuit Court, and all the clerks of the circuit courts in all the counties of the State to have chapter 2, page 5, Acts 1917, entitled "An act to provide for the election of delegates to a convention to revise the constitution of the state," etc., and so much of chapter 31, page 73, Acts 1917, entitled "An act granting women the right to vote for presidential electors and certain other officers, and to vote in certain elections," as grants to women the right and privilege of voting for delegates to a constitutional convention and on the ratification of a new constitution, and each of them severally, considered, held and declared null and void, and asked an injunction against each of the officers, their successors in office, their deputies, assistants, clerks, subordinates and official agents, prohibiting them from doing any act

or thing required to be done by said acts, or as therein described or as provided in the general election laws of the State invoked under and by virtue of said acts, and from taking any steps to provide and prepare for, hold, conduct or carry on said proposed election of delegates who shall constitute a convention for the purpose of revising the Constitution of the State of Indiana.

The complaint is in one paragraph and alleges in substance that chapter 2, page 5, Acts 1917, is null and void because the general assembly had no legislative or other power to decide and determine that there should be called and held in this State a constitutional convention to revise the present Constitution or to frame and submit to the people of this State a new constitution to supersede the present Constitution of the State; that the general assembly at its 1913 session (Acts 1913, ch. 304, p. 812) submitted to the electors of the State at the general election of 1914 the question of calling a constitutional convention and that the electors of the State, by a vote of 338,947 to 235,140, said that they did not desire a convention called and thereby declined to authorize the legislature to call a constitutional convention, and that since said election of 1914 there has been no poll taken nor any election held to determine the question as to whether the people of the State would authorize the general assembly to pass an act calling a constitutional convention to revise, alter or amend the present Constitution or to frame a new one to be submitted to the electors of the State for ratification, nor at any other time since the adoption of the Constitution of 1851 has the general assembly of the State been authorized by the electors of the State to call a constitutional convention or to pass an act providing for the calling of the same, and that in passing said act (Acts 1917, ch. 2, p. 5) said general assembly acted wholly without having submitted prior thereto

to the qualified electors of the State the question of whether a constitutional convention should be called. It is further averred that the title of the act does not express all the matters and subjects embraced in the act. It is further averred that chapter 31, page 73, of the Acts of 1917, authorizing women to vote for delegates and to ratify the constitution, is void as being in conflict with §2, Art. 2, of the present Constitution, and that as women are not within the class of electors as defined by that section of the present Constitution, the legislature had no power to confer on them the right to vote.

To this complaint all of the defendants filed a joint answer in general denial. The cause was submitted to the court and on proper request special findings of facts were made by the court and conclusions of law stated thereon. The conclusions of law are to the effect: first, that chapter 2, page 5, of the acts of 1917 is not void and that plaintiff, appellant, is not entitled to an injunction in so far as its provisions are concerned; and secondly, that the act granting women the right to vote, etc., is void, and as to that part appellant was entitled to have injunctive relief. Judgment was entered accordingly.

Appellant assigns errors on the first proposition and appellees assign cross-errors on the second proposition, but in view of the conclusion we have reached it will not be necessary for us to discuss the questions presented by the cross-errors.

In the beginning we are confronted with the contention on the part of appellees that this court has no jurisdiction to determine the questions in issue here.

1. In the case of *Ellingham* v. *Dye* (1912), 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915 C 200, 231 U. S. 205, 58 L. Ed. 206, this court, after reviewing many decisions as to the power of the courts to determine

similar questions, sums up the whole matter, on page 391, as follows: "Whether legislative action is void *for want of power* in that body, or because the *constitutional forms' or conditions have not been followed or have been violated* (our italics), may become a judicial question, and upon the courts the inevasible duty to determine it falls. And so the power resides in the courts, and they have, with practical uniformity, exercised the authority to determine the validity of proposal, submission or ratification of change in the organic law. Such is the rule in this State,"—citing more than forty decisions of this and other states.

Appellees further contend that appellant has not made out a case entitling him to equitable relief. The
2. trial court found that the officers of the State who were intrusted with the execution of the law were about to expend more than $500,000 under the law, in carrying out its provisions; indeed, it was suggested, in the course of the oral argument, that the necessary expenditures would amount to more than $2,-000,000. This court, in the case of *Ellingham* v. *Dye, supra,* involving the submission to the people of a constitution prepared by the legislature, answered this same question contrary to the contention of appellees. See pages 413 and 414 of that opinion.

Briefly stated, the principal questions presented for our consideration are: Has the general assembly authority to call a convention to revise the Constitution of the State or to make a new one without first submitting the matter to the voters of the State and receiving an affirmative answer? and, Has the legislature the authority to call a constitutional convention against the will of the people as expressed by the vote of 1914 on that question?

Very able and exhaustive briefs have been filed by both parties to this appeal and clear-cut propositions

are presented in each. As was suggested by a learned and able attorney for appellees, this, in a measure, is a pioneer question in this State, without many precedents on which to rely.

That the people of the State have a right to create a new constitution is conceded by all parties, the only difference of opinion being as to the manner of bringing about that result. It is contended by appellants that the legislature has no right to take the initiative in calling a constitutional convention but can act only after being properly directed by the people of the State in some form of a request or by having the question submitted to them; while appellees contend that the legislature has the right, without any suggestion from the people, to pass a bill or resolution providing for the calling of such convention.

If the passage of such a bill is within the purview of the Constitution governing ordinary legislation, there would be no question but that the general assembly might, without any suggestions, proceed to the enactment of such legislation, for the reason that within the field of legislation as fixed by §1, Art. 4, of the present Constitution, the legislature is supreme and its actions are circumscribed only by the terms of the State or federal Constitution. *Ellingham* v. *Dye, supra.* The almost universal holdings of the courts are to the effect that the duties which may be performed by the general assembly in relation to the change or making of a constitution are not governed by the general rule of authority as set out in §1, Art. 4, *supra. Ellingham* v. *Dye, supra,* 344.

The legislature has no inherent rights. Its powers are derived from the Constitution, and hence, where some action of the legislative body which action is outside of the particular field fixed by the Constitution and is not strictly legislative within the

meaning of §1, Art. 4, *supra,* is sought to be justified, a warrant for the same must be found somewhere— if not in the Constituion, then directly from the people, who, by the terms of §1, Art. 1, of the Bill of Rights, have retained the right to amend or change their form of government. The right of the people in this regard is supreme, subject, however, to the condi- tion that no new form of a constitution can be established on the ruins of the old without some action on the part of the representatives of the old, indicat- ing their acquiescence therein; and, the general assem- bly being the closest representative of the old, its ap- proval must be obtained by some affirmative act. This is the only orderly way that could be conceived. The question then arises, How may these—the people and the legislature—get together on this proposition? If no positive rule is provided by the fundamental law of the State, then, if a custom has prevailed for a suffi- cient length of years so that it is said to be fully estab- lished, that rule of custom must prevail.

It seems to be an almost universal custom in all the states of the Union, where the constitution itself does not provide for the calling of a constitutional convention, to ascertain first the will of the people and procure from them a commission to call such a convention, before the legislature proceeds to do so. The people being the repository of the right to alter or reform its government, its will and wishes must be consulted before the legislature can proceed to call a convention. 6 R. C. L. §17, p. 27; Hoar, Consti- tutional Conventions 68 (1917).

We find our own State, under the custom that has prevailed in other states, submitting to the people the question as to whether a convention should be called in the year 1915. (Acts 1913, ch. 304, p. 812.) The court trying this cause has found that on the submis-

sion of this question to the people at the regular election in 1914, 338,947 votes were cast against calling and holding the convention and only 235,140 votes were cast favoring it, out of a total vote of nearly 650,000, there being a clear majority against it of more than 103,000. If ever an emphatic protest has been registered against any proposition, it was in this instance. The court further found that this election was the last expression of the people of the State on the question of calling a constitutional convention. It cannot consistently be claimed that the legislature of 1917 had any commission from the people to call a constitutional convention as provided for in chapter 2, page 5, of the Acts of 1917. Under the old Constitution of the State, adopted in 1816, it was provided that the question of calling a constitutional convention should be submitted to the people every twelve years. This was held to be imperative every twelve years but not to prevent its submission at any period of less than twelve years. In 1849 the question was submitted to the people, who, through their will as expressed in an election of that year, commissioned the legislature to call a constitutional convention, which resulted in our present Constitution.

We have not been furnished with the citation of any case, nor have we been able to find one, in which the legislature has disregarded the latest expression of the people in that regard. The trial court finds that the election of 1914, under the act of 1913, is the only time since the adoption of the Constitution of 1851 that the question has been submitted to the people. We are of the opinion that the will of the people as expressed in the election of 1914 is as binding on the general assembly as a positive provision of the Constitution could be, and hence the action of the legislature in calling a constitutional convention as provided for in chap-

ter 2, page 5, of the acts of 1917, is null and void, being in conflict with §1 of the Bill of Rights and taking from the people the right to say when they desire a change in their fundamental law.

It is therefore ordered and adjudged that the judgment of the lower court denying injunction be reversed with directions to restate its first, third, fourth and fifth conclusions of law in conformity with this opinion. So-ordered without costs.

Spencer, Harvey, Meyers, JJ., concur.

Lairy, J., does not vote for the reason that he has not been able to advise himself sufficiently at this time. He desires the right to express his views later.

## Dissenting Opinion.

LAIRY, J.—The prevailing opinion holds that the act of the legislature of 1917, providing for the calling of a constitutional convention and a preparation of a proposed constitution by such convention and its submission to the people for their approval is unconstitutional and void for two reasons: first, because the legislature possessed no power to call a constitutional convention without first obtaining direct authority from the people to do so by means of a vote on the proposition as to whether they desired a new constitution; and secondly, because the act violates §1, Art. 1 of the State Constitution, which provides that the people have at all times an indefeasible right to alter and amend their form of government. As to the power of the legislature, it is held that such body does possess the power to submit to the people for their vote the proposition as to whether or not they desire a new constitution, but that this marks the limit of its power in respect to initiating a proceeding of this kind unless and until a favorable vote is obtained upon that question, after which it might

proceed to call a convention in pursuance of authority thus obtained from the people by their direct vote.

The holding that the legislature is without power in this respect is based upon the proposition that the initiation of a movement by that body for the call of a constitutional convention is not ordinary legislation, and, for that reason, such power is not conferred by §1, Art. 4, *supra*, by which all legislative power is conferred upon the general assembly. It is said that the legislative power thus conferred carries authority to make and repeal laws as rules of civil conduct pursuant to the Constitution and to carry out the details of government so instituted, but that it does not carry or include authority for fundamental legislation. The conclusion reached is that, as the power to originate a movement for a new constitution by calling a convention is not granted by the section of the Constitution last cited, the legislature cannot possess such power unless an express grant thereof be found in some other part of the Constitution, or unless it be obtained by a direct vote from the people.

The statement that the legislature may obtain from the people the power to call a constitutional convention, admits that the general assembly has power from some source to institute a movement of this kind by providing for the submission of such question to a vote of the people. This power is not directly conferred by the Constitution; and, under the holding of the court, it is not one of the ordinary legislative powers granted by §1, of Art. 4, of the Constitution. Whence then comes this power and what is its nature? Within what limits may it be exercised, and how are such limits to be fixed? As the majority opinion holds that the power is not a legislative power, and that it is not conferred by the Constitution, it must be a political power resting in the general assembly as the branch of government which

most directly represents the people. This power is not granted by the Constitution and that instrument places no limitations upon it. Can the court limit a power of a co-ordinate branch of government, when the Constitution imposes no limitations? If the legislature has power to initiate a movement of this kind, which all concede, what right has the court to place a limitation upon the power so long as its exercise does not conflict with any provision of fundamental law? If the legislature has power to provide for the submission of the desirability of a new constitution to a vote of the people and may afterward call a convention, why deny that it has the power to call the constitutional convention first and provide that the desirability of the new constitution shall be submitted to the people afterward? Neither of such powers is expressly granted by the Constitution and neither of such acts is prohibited by it.

When a co-ordinate branch of government assumes to exercise a political or governmental power which is not forbidden by the Constitution and the scope of which is not limited thereby, can the courts interfere with its exercise or fix limitations upon such power? It is claimed that the case of *Ellingham* v. *Dye* (1912), 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915 C 200, 23 U. S. 205, 58 L. Ed. 206, and the authorities there cited recognize the right of the courts to limit and control the exercise of 'such powers; but an examination of the authorities cited will show that they go no further than to hold that the courts may confine the exercise of such powers within the limits fixed by the Constitution. When the Constitution provides that a power shall be exercised in a particular manner, a failure to comply with the provisions of the Constitution in any material respect will vitiate the act and the courts have power to so declare. *State* v. *Swift* (1880), 69 Ind. 505; *In re Denny* (1901), 156 Ind. 104, 59 N. E. 359, 51 L. R.

A. 722; *Hays* v. *Hays* (1897), 5 Idaho 154, 47 Pac. 732; *Gabbert* v. *Chicago, etc., R. Co.* (1902), 171 Mo. 84, 70 S. W. 891; *State, ex rel.* v. *Powell* (1900), 77 Miss. 543, 27 South. 927, 48 L. R. A. 652; *Lobaugh* v. *Cook* (1905), 127 Iowa 181, 102 N. W. 1121; *State, ex rel.* v. *Dean* (1909), 84 Neb. 344, 121 N. W. 719; *Carton* v. *Secretary of State* (1908), 151 Mich. 337, 115 N. W. 429; *McConaughy* v. *Secretary of State* (1909), 106 Minn. 392, 119 N. W. 408.

However, the power which is here asserted is not forbidden by the Constitution, the manner of its exercise is not prescribed, nor is the scope of its exercise limited by that instrument. It is a political power abiding in the legislature which is an independent co-ordinate branch of the state government. When the legislature representing the people assumes in the exercise of such power to inaugurate a movement for a new constitution and to provide a means by which the people may frame and adopt such a constitution, if they desire to do so, I do not think that the judicial department can properly deny the power or confine its exercise within limits not fixed by the Constitution.

The government of the state consists of three departments, the legislative, the judicial and the executive. Each of these departments is independent of the other. Each is responsible for its own acts, within constitutional limits, free from interference or control of any other department of government. The legislative branch of the government provided a *modus operandi* by which the people of the State might frame and adopt a new constitution, the executive branch of the government, according to the allegations of the complaint, is about to proceed to carry out the provisions made to that end, but this court, exercising the supreme judicial power of the State interferes and forbids fur-

ther, steps toward carrying out the provisions thus made by the legislature.

The Constitution is the supreme law of the State and when an act of the legislature conflicts with this basic law the Constitution must be upheld, and the act must fail in so far as it is affected by such conflict. It is the province of the court to decide when a conflict exists and this is determined from a consideration of the provisions of the Constitution in connection with the act under consideration. One who asserts that an act of the legislature is violative of the Constitution must point out the specific provision in that instrument with which it conflicts. *Haun* v. *State, ex rel.* (1914), 183 Ind. 153, 155, 108 N. E. 519.

Before a court should strike down an act of the legislature, it must decide that the act in question conflicts with one or more of the specific provisions of the Constitution. A court may not overthrow an act of the legislature because, in its opinion, such act violates the spirit of our institutions, or impairs rights which it is the object of a free government to protect, or because it encroaches upon the natural rights of citizens. *Townsend* v. *State* (1896), 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477. If the legislation is not clearly in conflict with some express provision of the State or federal Constitutions it must be upheld. *Levy* v. *State* (1903), 161 Ind. 251, 68 N. E. 172.

Because it is the peculiar province of the courts to determine what the law is, it is their duty, when two laws conflict, to determine the force and effect of each. If a law is challenged as being in conflict with a provision of the Constitution it is the duty of the court to consider both the law and the Constitution to see if the statute can be upheld and enforced without violating the Constitution. To this end a court will

construe a statute which is doubtful in its meaning in such a way, if possible, as to reconcile it with the Constitution and every reasonable doubt will be indulged in favor of its validity. The courts are very reluctant to strike down an act of the legislature, but where the conflict between the statute and fundamental law cannot be reconciled, the statute must yield to the superior force of the Constitution.

This doctrine was first announced in the case of *Marbury* v. *Madison* (1803), 1 Cranch 137, 177, 2 L. Ed. 60, where it was said: "It is, emphatically, the province and duty of the judicial department, to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each. So, if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case, conformable to the law, disregarding the constitution; or conformable to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case: this is of the very essence of judicial duty. If then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply." Within the limits thus declared, this case has been approved and followed by the several states, but no court to the writer's knowledge has gone beyond the limits there announced. The court is concerned in determining whether the legislation is repugnant to any specific provision of the Constitution; but, if it is not found to be in conflict, the court will not concern itself as to the extent of legislative power, unless the manner of exercising the power is prescribed by the Constitution or

limitations placed thereon by such instrument. The legislature and the courts both derive their power from the same source—the people. They are co-ordinate branches of government and each is responsible to the people, the common source of power, for the rightful exercise of the powers they assume. Neither the legislative department nor executive department has any right to question the power which the court exercises and the judicial department has no right to question the power exercised by either of the other departments, where the power is not denied or limited by the Constitution. The legislature has power to pass an act which is unconstitutional and the governor has power to sign it. The courts may, however, declare it void when it is found in a proper proceeding to be in conflict with the basic law. It is void, not because the legislature had no power to pass it, but because its force and effect is overcome by the superior force and effect of the Constitution.

In passing the act of 1917, providing for the calling of a constitutional convention, the legislature assumed the exercise of a power for which it alone is answerable to the people. As before stated this is a political power which rests in the legislature as the representative of the people. It is neither granted by the Constitution nor forbidden by it. The manner of its exercise is not prescribed by that instrument and its scope is in no way limited thereby. Under such conditions the court may not rightfully direct the manner in which the power must be exercised, neither can it deny the power nor confine its exercise within limits not fixed by the Constitution.

"I entertain no doubt," says Comstock, J., "that, aside from the special limitations of the Constitution, the Legislature cannot exercise powers which are in their nature essentially judicial or executive. These are, by

the Constitution, distributed to other departments of the government. It is only the 'legislative power' which is vested in the Senate and Assembly. But where the Constitution is silent, and there is no clear usurpation of the powers distributed to other departments, I think there would be great difficulty and great danger in attempting to define the limits of this power. Marshall, Ch. J., said * * *: 'How far the power of giving the law may involve every other power, in cases where the Constitution is silent, never has been, and perhaps never can be definitely stated.'" *Wynehamer* v. *People* (1856), 13 N. Y. 378, 391. This language is quoted with approval by Judge Cooley in his able work on Constitutional Limitations. Cooley, Const. Lim. (7th ed.) 128. In the face of such high authority on constitutional law as Chief Justice Marshall and Judge Cooley, I would not attempt to define or limit a power of the legislature not defined nor limited by the Constitution.

In assuming to exercise this power I have no doubt that the legislature acted in good faith and in conformity with the oath taken by each member to the effect that he would support and uphold the Constitution. In determining that it had such power, it was not without respectable authority and precedent. No one denies the right of the people to adopt a new constitution whenever they may desire to do so. Our Constitution makes no provision as to how this may be done. All authorities seem to agree that if a change of the form of government is to be accomplished without a revolution it must be done with the assent of the constitutional government. The movement must originate somewhere. As the legislature directly represents the people, it has been generally regarded as the appropriate body to initiate a movement of this kind; and, in most, if not all, of the states where new constitutions

have been adopted, the movement has originated in the legislature. All writers on constitutions and constitutional law agree in saying that the power to call a constitutional convention for a state resides in the legislature where the existing constitution provides no other means. "But the will of the people to this end can only be expressed in the legitimate modes by which such body politic can act, and which must either be prescribed by the constitution whose revision or amendment is sought, or by an act of the legislative department of the State, which alone would be authorized to speak for the people upon this subject, and to point out a mode for the expression of their will in the absence of any provision for amendment or revision contained in the constitution itself." Cooley, Const. Lim. (6th ed.) 42. "It requires no provision in the existing constitution to authorize the calling of a convention for the purpose of revising the fundamental law. The legislative department of the government is alone empowered to take the initiative in calling a constitutional convention, unless a different mode of procedure is laid down in the constitution. And such action may be taken in the form of a joint resolution; a formal statute is not required in order to provide for a lawful convention." 6 Am. and Eng. Ency. Law 896. "It has now become the established rule that where the constitution contains no provision for the calling of a convention, but has no provision expressly confining amendment to a particular method, the legislature may provide by law for the calling of a convention—that is, the enactment of such a law is within the power of the legislature unless expressly forbidden, and is considered a regular exercise of legislative power." Dodd, Revision and Amendment of State Constitutions 44. Judge Jameson says: "Whenever a constitution needs general revision, a constitutional convention is indispensably necessary; and, if

there is contained in the constitution no provision for such a body, the calling of one is believed to be directly within the scope of the ordinary legislative power." Jameson, Constitutional Conventions 211. In the most recent work of constitutional conventions the author takes the position that the power to call constitutional conventions exists in the legislatures of states where no other mode of procedure is prescribed by the constitution, but he asserts that the power thus exercised is not within the scope of ordinary legislative power as stated by Jameson, but that it is a necessary power abiding in the legislature as the body directly representing the people. Hoar, Constitutional Conventions, ch. 5. Similar declarations of such authority are found in judicial decisions. *Wells* v. *Bain* (1874), 75 Pa. St. 39, 47, 15 Am. Rep. 563; *Carpenter* v. *Cornish* (1912), 83 N. J. Law 254, 83 Atl. 31.

This court in *Ellingham* v. *Dye, supra,* 383, with approval quotes the following: "On the other hand, long-established usage has settled the principle that a general grant of legislative power carries with it the authority to call conventions for the amendment, or revision of the constitution; and even where the only method provided in the constitution for its own modification is by legislative submission of amendments, the better doctrine seems to be that such provision, unless in terms restrictive, is permissive only, and does not preclude the calling of a constitutional convention under the implied powers of the legislative department." Relying on these authorities, the legislature would naturally assume that it had power to call a constitutional convention. The authorities all seem to sustain the power and none can be found to the contrary.

The majority opinion in this case concedes the power to exist in the legislature, but holds that it cannot be exercised until the consent of the people has been se-

cured by, a referendum vote on the question of the desirability of such a convention. The Constitution places no such restriction or limitation on the power. If the power exists in the legislature, it exists subject only to the restrictions placed upon it by the Constitution, and no other can rightfully be imposed by the courts. To do so is an unwarranted assumption of power. Where the Constitution does not prescribe the specific manner in which the power shall be exercised the legislature may determine the manner of such exercise, and the court should not substitute its discretion in this respect for that of the legislature. The legislature in its discretion, adopted a plan by which the people may, if they desire, frame and adopt a new constitution. The majority opinion outlines another plan by which the same result may be accomplished by the people and holds that the plan so outlined is exclusive of all others, and is the only method that can be legally pursued. According to the prevailing opinion the essential thing to the validity of any act of the legislature providing for a constitutional convention is the preliminary submission of the question of the desirability of such convention to a vote of the people. No plan adopted can be valid without such provision. By what authority is such a requirement imposed? The Constitution does not require it and the court has no power to impose it. If the framers of the Constitution of 1851 had prescribed a plan to be followed the legislature would have been bound to follow the method thus prescribed; but, where the Constitution prescribes no plan the court is powerless to do so. The court possesses no legislative powers and it certainly cannot take from or add to the Constitution by one jot or tittle. I think that a court should not by its fiat attempt to limit the power of a co-ordinate branch of the government to any extent further than such power is limited by the Constitution.

If a new constitution should be adopted in accordance with the plan outlined by the court, the people would have a new constitution framed by delegates elected by them for that purpose in accordance with the act of the legislature calling the constitutional convention, and if a new constitution were to be adopted in accordance with the plan embodied in the act of 1917, the result would be a new constitution, adopted by delegates elected for that purpose in accordance with the act of the legislature calling the convention. On the other hand, if the attempt to adopt a new constitution failed, the result would be the same no matter which of the plans were followed—the old constitution would remain in force. Reduced to its last analysis, it is clear that the only difference between the plan outlined by the court in its opinion and the plan embodied in the act of 1917 is one of method. The plan recognized by the court may be more wise, more economical, and more expedient than that adopted by the legislature, and while such questions should be considered by the legislature before passing a law, they have no place here. When a court is engaged in considering the validity of a law from a constitutional standpoint it has no ears to hear arguments addressed to questions of wisdom, economy or expediency. *State, ex rel.* v. *McClelland* (1894), 138 Ind. 395, 399, 37 N. E. 799; *Hirth-Krause Co.* v. *Cohen* (1911), 177 Ind. 1, 97 N. E. 1, Ann. Cas. 1914 C 708; *Booth* v. *State* (1912), 179 Ind. 405, 411, 100 N. E. 563, L. R. A. 1915 B 420, Ann. Cas. 1915 D 987.

So the fact, if it be a fact as suggested by counsel in argument, that more than a million dollars of the State's money would be spent in vain if the movement for a new constitution should ultimately fail is of no importance here. The argument that the will of the people as to a constitutional convention could be ascer-

tained by vote at much less expense before calling such convention cannot be considered. Such arguments might have great weight with the legislature and no doubt they were heard and considered there, but they can be given no consideration here. The fact that in 1914 the people of the State by a large majority defeated a proposition to call a constitutional convention was one which might have appealed with much force to the legislature when considering the act of 1917. It would present a question as to the wisdom and expediency of calling such a convention so soon after such a decisive defeat of a similar proposition, but such a question is exclusively for the consideration of the legislature and that body is responsible to the people for its decision.

So, the fact that in a majority of the states where constitutional conventions have been called the question as to the desirability of calling such convention was submitted to a vote of the people before making the call is not of controlling influence. That method has not been uniformly followed as a number of such conventions have been called without first submitting that question to a vote. For example, Connecticut, 1818; Rhode Island, 1824, 1834, 1841, 1842; New Jersey, 1844; Missouri, 1861, 1865; Arkansas, 1874; North Carolina, 1876; Louisiana, 1879; and Mississippi, 1890. The discretion of the legislature as to the method to be adopted in calling a constitutional convention could not be controlled by the legislature of another state or of any number of states. As to the method adopted it is controlled only by the existing Constitution, and, so long as it does not violate the express or implied provisions of that instrument, it may adopt the method which seems most wise and expedient under existing conditions. The fact that many of the constitutions adopted by other states in recent years contain pro-

visions requiring the legislature to submit to a vote the desirability of calling a constitutional convention and forbidding the call of such convention until a favorable vote has been given is not an argument against the method adopted in passing the act of 1917. Our present Constitution contains no such provision, and the presence of such provisions in the constitutions of other states would indicate that their purpose was to deprive the legislatures of those states of a discretion which would exist and which might otherwise be exercised. It would rather seem that our legislature, in the absence of such a constitutional limitation of power, would possess the discretion which is denied to legislatures of those states where such constitutional provisions exist.

The decision of the questions involved in the case of *Ellingham* v. *Dye, supra,* does not control the questions here involved. In that case the legislature sought to frame a constitution for the people and submit it to them for adoption without the intervention of a constitutional convention. It was held that the people had a right to frame their own constitution by a convention composed of delegates elected by them for that purpose. The act under consideration provides for a constitutional convention and it is not open to the objections which were considered vital in that case.

One further question remains to be considered. Does the plan of procedure embodied in the act of 1917 conflict with §1, Art. 1, of the State Constitution, which reserves to the people the indefeasible right to alter and reform their government? Under the plan adopted, the people have a right through delegates elected for that purpose to frame the constitution which would contain such alterations and reformations in the form of government as seemed proper to the delegates and after the constitution was so framed the people by their vote would have a right to accept or reject the changes thus

Bennett *v.* Jackson—186 Ind. 533.

offered. To my mind the plan adopted by the act does not in any way or to any extent impair or abridge the rights of the people under this section of the Bill of Rights; but, on the other hand it provides a means by which the people may exercise their indefeasible right to alter and reform their government.

I have now discharged a distasteful duty. I regret deeply that I am unable to agree with my brothers on the bench for whose learning, ability and judgment I have a profound and reverential respect. It may be and probably is true that, in view of existing war conditions, this is an ill-chosen time to attempt constitutional revision. It may be true that the plan adopted by the legislature is unwise, in that it may occasion a useless expenditure of the people's money, if it should be ascertained in the end that a new constitution is not desired, when that fact could have been learned in a manner much less expensive. If the question to be decided involved the wisdom of the plan adopted or its expediency, my conclusion might be against it on those grounds, but, as such considerations can have no place in determining the validity of the plan from a constitutional standpoint, I am forced to the conclusion that the plan for holding a constitutional convention embodied in the act of 1917 is unobjectionable when viewed from that standpoint.

NOTE.—Reported in 116 N. E. 921. Power of courts to determine the validity of the action by a legislature proposing a constitutional amendment, Ann. Cas. 1914 B 925. See under (2) 36 Cyc 917; (3-6) 12 C, J, 682-684.