WRIGHT ET AL. v. HOUSE.

[No. 23,476. Filed January 10, 1919. Rehearing denied April 22, 1919.]

1. CONSTITUTIONAL LAW.— *Eminent Domain.* —*Due Process.*— *Compensation.*—The fifth amendment to the federal Constitution applies only to the federal government; hence, a state statute cannot be held invalid on the ground that it conflicts with such amendment.  p. 252.

2. CONSTITUTIONAL LAW.—*Due Process.*—*State Statute.*—A state law that would have the effect by its enforcement of depriving a citizen of his property without due process of law would be void as violative of the fourteenth amendment of the federal Constitution, since such amendment is prohibitive on the several states in respect to the rights of citizens therein guaranteed.  p. 252.

3. TAXATION.—*Levy.*—*Notice and Hearing.*—*When Necessary.*— The rule that, where a local public improvement is constructed under a law providing that the cost, or a part thereof, shall be levied on specific property benefited, the owners of such property are entitled to notice and an opportunity to be heard, has no application to the exercise of the general taxing power of the state or of any of its municipal subdivisions.  p. 253.

4. TAXATION.—*General Taxes.*—*Amount.*—Since the benefits resulting from organized government cannot be measured in money, taxes levied for governmental purposes are not imposed on the basis of actual benefits resulting to each citizen in proportion to the taxes paid, and the power to tax for such purpose is limited only by governmental needs.  p. 254.

5. TAXATION. — *Purpose.* — *Public Improvements.* — Where the legislature authorizes public improvements that are of such general benefit as to warrant the construction thereof by the state, or by any of its governmental subdivisions, it has power to determine the manner in which the fund shall be raised for the payment of the cost and expenses.  p. 254.

6. TAXATION.— *Public Improvements.*— *General Tax.*— *Special Assessments.*—*Legislative Power.*—If the legislature decides that a public improvement is of such general benefit as to justify such a course; it may provide that the entire cost shall be raised by a general tax; or, in case it decides that such improvement is not of sufficient public importance to justify the payment of the entire cost by a general tax, it may provide that special assessments shall be made against property beneficially affected and that the remainder be paid by the municipality within which the improvement is located from funds raised by general taxation; or, if the total costs do not exceed the aggregate special benefits to the property so affected, the legislature may provide that the entire costs shall be specially assessed against such property.   p. 254.

7. TAXATION.—*Legislative Power.*—*Public Improvements.*—The power to determine in what manner the cost of a public improvement shall be raised is legislative in character, and the action of the legislature in that regard is binding on the other departments of government.   p. 255.

8. TAXATION.—*General Tax.*—*Special Assessments.*—*Liability.*— A "general tax," under §10344 Burns 1914, Acts 1903 p. 49, creates a personal liability of the taxpayer, and constitutes a general lien on real and personal property of the taxpayer situated in the county; while a "special assessment" creates a particular lien on the property assessed, on the theory that such property has been beneficially affected, and such lien, not being personal, cannot be enforced against any other property. pp. 255, 256.

9. HIGHWAYS.—*Improvement.*—*Constitutional Law.*—*Due Process.*—*"Due Course of Law."*—*General Tax.*—Since the funds provided for under the State Highway Act (Acts 1917 p. 253) for the improvement of highways arise from an exercise of the general taxing power, and not from special assessments, the question of actual benefits to property affected is not involved and property owners are not entitled to a notice and hearing on that question, "due process" under the fourteenth amendment to the federal Constitution, or "due course of law" under Art. 1, §12, of the state Constitution, requiring only such procedure as is suited and adapted to the levy and collection of general taxes.   pp. 256, 257.

10. HIGHWAYS.—*Power to Construct.*—*Nature of Function.*— *General Tax.*—*Legislative Power.*—Since the power to construct and maintain public highways, like the power to construct and maintain the state institutions, is a governmental function, the legislature may provide for their establishment and maintenance by a general tax, or empower any of the

Wright *v.* House—188 Ind. 247.

governmental subdivisions of the state to levy and collect taxes for that purpose in the exercise of delegated governmental powers.   p. 257.

11.   CONSTITUTIONAL LAW.—*Judicial Power.—Legislative Power. —Taxation.*—If the exercise of the taxing power in any instance is regarded by the people as unwise, unjust or oppressive, the remedy must be sought through legislative action, the judicial department being powerless to grant relief on such grounds.   p. 257.

12.   EMINENT DOMAIN.—*General Taxation.—Highways.—Constitutional Law.*—The State Highway Act (Acts 1917 p. 253) does not conflict with Art. 1, §12, of the state Constitution, which provides that no man's property shall be taken by law without just compensation, such prohibition not extending to the general taxing power of the state.   p. 258.

13.   TAXATION.—*Uniform Taxation.—Highways.—Constitutional Law.*—The State Highway Act (Acts 1917 p. 253) does not conflict with Art. 10, §1, of the state Constitution, which provides for a uniform and equal rate of taxation and assessment, although one county, by reason of greater improvements, may pay a larger tax rate than another, since each county is a separate unit for the purpose of taxation.   p. 258.

14.   STATUTES.— *Title.— Subject.— Constitutional Law.*— Where the general subject of an act is expressed in the title, it is not necessary that matters properly connected therewith shall be also expressed in the title.   p. 258.

15.   STATUTES.— *Title.— Subject.— Highways.*— The selection of roads to be improved under the State Highway Act (Acts 1917 p. 253), and the appropriation of money and the levy of taxes to raise funds to pay for such improvements, are properly connected with the subject of the act as expressed in the title "An act creating a highway commission, providing for the construction, reconstruction, maintenance, repair and control of public highways," etc.   p. 259.

16.   STATUTES.—*"Local or Special Law."—Highways.—Constitutional Law.*—The State Highway Act (Acts 1917 p. 253) is in no sense a local or a special law so as to bring it within the inhibition of Art. 4, §22, of the state Constitution.   p. 259.

17.   CONSTITUTIONAL LAW.—*Validity of Act.—Appeal.—Objection.*—The objection that an act invades "the reserved power of the people" is indefinite, and unless the provision of the Constitution containing such reservation is pointed out, the Supreme Court will assume that the term is used with reference to some supposed governmental power that the people impliedly reserved unto themselves when the Constitution was adopted.   p. 259.

18.  CONSTITUTIONAL LAW.—*Legislative Power.*—*State Constitution.*—*Construction.*—The state Constitution carries a general grant of legislative power under which the legislature may enact any law on any subject, unless the power is limited or denied by other express provisions; the cases of *Ellingham* v. *Dye* (1912), 178 Ind. 336, and *Bennett* v. *Jackson* (1917), 186 Ind. 533, which seem to recognize a residue of power abiding in the people, must be confined in their scope to legislation that would deny, limit or impair the inherent and indefeasible right of the people to alter their government by the adoption of a new constitution. pp. 259, 260, 261.

19.  CONSTITUTIONAL LAW.—*Legislative Power.*—*Federal Constitution.*—*Construction.*—The federal Constitution confers on Congress certain legislative power, and all such power not thus conferred is reserved to the several states. p. 260.

20.  HIGHWAYS.—*Highway Commission.*—*Nature.*—By the creation of a state highway commission, the State Highway Act (Acts 1917 p. 253) does not establish a new department of government, the commission being an administrative body intrusted with the application and administration of the act under which it is appointed. p. 262.

21.  CONSTITUTIONAL LAW.—*State Highway Commission.*—*Judicial Power.*—The State Highway Act (Acts 1917 p. 253), which creates a highway commission, is not open to the objection that it confers powers of a judicial nature upon a body that is administrative in its character. p. 262.

From the Hamilton Circuit Court; *Ernest E. Cloe,* Judge.

Action by Robert M. House against Lorenzo H. Wright and others to enjoin the improvement of a highway. From a judgment for the plaintiff, the defendants appeal. *Reversed.*

*Ele Stansbury,* Attorney-General, and *John H. Edwards,* for appellant.

*Christian, Christian & Waltz* and *William V. Rooker,* for appellee.

LAIRY, J.—At the 1917 session of the legislature of the State of Indiana a law was passed entitled "An Act creating a highway commission, providing for the construction, reconstruction, maintenance, repair and control of public highways, and providing for co-opera-

tion with the federal government in the construction of rural post roads," approved March 8, 1917. Acts 1917 p. 253. In accordance with the provisions of this act the Governor of the state appointed Lorenzo H. Wright, David C. Jenkines, Haines Egbert and Lewis Taylor as members of the state highway commission. This commission, in accordance with the provisions of §9 of the act, designated certain roads of the state as main market highways, which designation was approved by the Governor. One of the highways so designated extends through the county of Hamilton in said state, twenty miles of which road is within the limits of said county. December 4, 1917; the board of commissioners of Hamilton county made an order directing that a portion of main market highway No. 1, as designated by the state highway commission, beginning at the south boundary line of Hamilton county and extending north a distance of approximately five miles to the town of Carmel, be improved as a main market highway, according to plans, specifications and estimates to be furnished by the state highway engineer, and in accordance with the provision of the act heretofore cited. After entering the order the board of commissioners made a written application to the state highway commission for state aid in the construction of said work, agreeing therein that the county of Hamilton would pay fifty per cent. of the total cost of said improvement, and reciting therein that the money to meet the county's part of the expense would be available upon the completion and acceptance of the work as provided by §18 of the act, supra, and that the money would be raised by the issue of the bonds of Hamilton county, as provided by §28 of the act, supra, under consideration.

This action was brought by appellee, as a property owner and taxpayer of Hamilton county, against the members of the state highway commission and the mem-

bers of the board of commissioners of Hamilton county and the other state and county officials who are charged with duties in carrying out the provisions of the act, the purpose of the action being to enjoin the defendants, and each of them, from taking further action under said statute on the ground that it was void because in conflict with certain provisions of the federal Constitution, and also certain provisions of the Constitution of this state. Appellee prevailed in the trial court and appellants seek by this appeal to reverse the decision of that court.

Appellee asserts that the act in question violates the federal Constitution in two particulars: First, that in its operation it would have the effect of depriving him and others in like situation of property without due process of law in violation of the fourteenth amendment; and, second, that its operation would result in the taking of his property, and the property of others in like situation, for a public use without just compensation, in violation of the fifth amendment.

The Supreme Court of the United States has decided that the fifth amendment to the federal Constitution applies only to the federal government. It follows that it does not apply to the government of the several states, and that a state statute cannot therefore be held invalid because it may conflict with the provisions of this amendment. *Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369. Our state Constitution contains a similar provision which will be considered later in this opinion.

On the other hand, the fourteenth amendment is prohibitive on the several states in respect to the rights of citizens thereby guaranteed. A state law, therefore, which would have the effect by its enforcement of depriving a citizen of his property with-

out due process of law would be void as violative of this amendment.

In opposition to the validity of the act under consideration, it is asserted that the provisions made therein for raising the money with which to pay for the improvement, if enforced, will result in depriving appellee, and others in like situation, of property without affording them due process of law.

This assertion is based on the assumption that, by due process of law, appellee is entitled to have the amount, which he shall be required to. pay for the proposed improvement, determined and fixed by a court or some other regularly constituted tribunal after a notice and an opportunity to be heard. This court has recently held that, where a local improvement of a public nature is constructed under a law providing that the costs shall be paid in whole or in part from the proceeds of special assessments to be levied on the property beneficially affected thereby, the property owners have a right to notice and an opportunity to be heard before a special assessment of this kind can be legally imposed. *Harmon* v. *Bolley* (1918), 187 Ind. 511, 120 N. E. 33. The reason for the rule there announced is that such assessments are made on the theory that each particular piece of property assessed is specially affected and benefited to an extent at least equal to the amount of the assessment imposed. Such assessments are imposed on the theory that the property affected is enhanced in value or otherwise specially benefited to the full amount of the assessments imposed, and that nothing is exacted by the assessment which is not fully compensated by benefits actually accruing to the land affected. *Norwood* v. *Baker* (1898), 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. The rule thus announced applies only to special assessments made against specific property based on actual benefits resulting thereto

on account of a local improvement.   The rule has no application to the exercise of the general taxing power of a state or of any of its municipal subdivisions.

Taxes levied for governmental purposes are not imposed on the basis of a special and particular benefit accruing to each citizen in proportion to the 4.   taxes paid.   The protection of life, liberty, and property, and the other rights, privileges, immunities and benefits which a citizen enjoys as a result of living under the protection of an organized government are of such a nature that their value cannot be measured by dollars and cents.   The power to tax for such purpose is not limited to actual benefits resulting to the citizen by reason of the maintenance of government, but such power is limited only by governmental needs.   *Harmon* v. *Bolley, supra; Kelly* v. *Pittsburgh* (1881), 104 U. S. 78, 26 L. Ed. 658.

There can be no doubt that improvements of a public nature such as the construction and improvement of highways, waterways, bridges, and other works 5.   of a like nature, may be of such general benefit as to warrant their construction at government expense in the exercise of governmental power.

6.   Where the legislature authorizes an improvement of the character mentioned to be made by the state, or by any of its governmental subdivisions, it has power to determine the manner in which the fund shall be raised for the payment of the costs and expenses.   If it decides that the improvement is of such general benefit and public importance as to justify such a course, it may provide that the entire fund shall be raised by a general tax.   In case the work contemplated is not regarded by the law-making power as of sufficient public importance to justify the payment of the entire cost by general taxation, it may provide that property beneficially affected by the improvement shall bear a portion

of the cost to be specially assessed against it in proportion to the accruing benefits, and that the remainder of the cost shall be paid by the municipality within which the improvement is located from funds raised by general taxation; or the legislature may provide that the entire cost and expense of the improvement shall be specially assessed against the property beneficially affected in case the total costs and expenses do not exceed the aggregate special benefits accruing to the property so affected. 1 Page and Jones, Taxation by Assessment §239; *Lowe* v. *Board, etc.* (1900), 156 Ind. 163, 59 N. E. 466; *State, ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 85 N. E. 513; *City of Indianapolis* v. *American, etc., Co.* (1911), 176 Ind. 510, 96 N. E. 608. The power to determine in which of these ways such

7. a fund shall be raised is legislative in character, and the action of the legislature in that regard is binding on the other departments of government.

In framing the statute under consideration the legislature provided that the entire cost of the contemplated construction and improvement of highways

8. should be paid from funds raised by the exercise of the general taxing power, and no provision is made for the payment of any part of such cost by special assessments against property on the theory that it will receive benefits to the extent of the assessment imposed. The act provides that where a part of a main market highway lying within the limits of a county is improved under the provisions of the act, the costs of such improvement shall be paid, one-half by the state and one-half by the county within which the improvement is located, except as to portions of such improvement located within the limits of a city or incorporated town. As to the cost of such portion, the act provides that the city or town, the county, and the state shall each pay an equal part. Acts 1917 p. 253, §§14 and 15.

Section 27 of the act, *supra,* provides for a state highway fund, a part of which is derived from moneys to be paid to the state treasurer under the operation of §15 and.§26 of the act, and the remainder is raised by the exercise of the general taxing power of the state. Under §28 of the act, a county in which an improvement has been made under the provisions of this act may provide a fund to pay its portion of such improvement, either by the appropriation of county funds on hand, or by the issue of county bonds or the levy of a special highway tax in accordance with statutes relating to the issue of county bonds and the levy of special highway taxes.   Irrespective of which of these methods the county may adopt, it is clear that the entire amount which the county contributes to the costs of an improvement constructed therein is ·derived from the proceeds of a general tax levied on all property subject to taxation by the county.   A general tax creates a personal liability of the taxpayer, and constitutes a general lien on real and personal property of the taxpayer situated in the county.   §10344 Burns 1914, Acts 1903 p. 49.   A special assessment is imposed on particular property, generally some definite tract or parcel of real estate.   It constitutes a particular lien on the property assessed on the theory that such property is benefited by the improvement to the extent of the assessment.   Such an assessment does not create a personal liability against the owner, and it cannot be enforced against any of his property other than that against which it is made.   The funds to be raised under the provisions of the act in question to pay for the improvement of highways are not the proceeds of special assessments, but, on the contrary, arise from an exercise of the general taxing power.   The question of actual benefits to property affected is not involved, and appellee is not entitled to a

notice and hearing on that question. Due process of law requires only that the tax shall be levied and collected by such a procedure as is suited and adapted to the levy and collection of general taxes and such as is generally resorted to for that purpose. *Lake Shore, etc., R. Co.* v. *Smith* (1892), 131 Ind. 512, 521, 31 N. E. 196.

The power to construct and maintain public highways is a governmental function, the same as the power to build schoolhouses and support schools or to build courthouses and jails, or to construct and maintain asylums for the insane or for the dependent poor. The legislature may provide for the establishment and support of state institutions and raise funds for such purpose by a general state tax. The legislature may likewise empower any of the governmental subdivisions of the state to levy and collect taxes for similar purposes in the exercise of their delegated governmental powers. If the exercise of the taxing power in any instance is regarded by the people as unwise, unjust or oppressive, the remedy must be sought through the action of the legislature. The judicial department of the state is powerless to grant relief on those grounds. *State, ex rel.* v. *Board, etc., supra; Lowe* v. *Board, etc., supra.*

The complaint alleges that the statute under consideration conflicts with several provisions of the state Constitution. It is asserted that the operation of the act will result in an injury to appellee in respect to his property for which no remedy is afforded by due course of law, in violation of the rights guaranteed by §12 of our Bill of Rights. The discussion of the "due process of law" provision of the federal Constitution is applicable to this section of the state Constitution. For the reasons there stated appel-

lee will not suffer any legal injury to his property rights for which a remedy is not afforded by due course of law.

The act, *supra*, does not conflict with §21 of Art. 1 of the state Constitution, which provides that no man's property shall be taken by law without just com-

12. pensation, for the reason that this prohibition does not extend to the general taxing power. *State* v. *Richcreek* (1906), 167 Ind. 217, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899; *Hanly* v. *Sims* (1910), 175 Ind. 345, 93 N. E. 228, 94 N. E. 401.

By §1, Art. 10, of the state Constitution, the legislature is required to provide by law for a uniform and equal rate of taxation and assessment.   There is

13. nothing in the act in question which conflicts with this provision of the Constitution.   The fund to be provided in any county under the provisions of the act to pay its part of the costs of the improvements of highways is raised by a general tax on the property of the county levied and collected as other taxes are levied and collected.   The fact that the tax rate in counties where extensive improvements are made under the law may be greater than the tax rate in other counties where no improvements are made, or in counties where the improvements thereunder are less extensive, does not signify that the rates of taxation are not uniform within the meaning of the Constitution. Each county is a separate unit for the purpose of taxation, and it cannot be maintained that, within the county making the improvement, the tax levy is unequal.

It is claimed that the title of the act fails to conform with §19, Art. 4, of the Constitution, in that the subject of the act as stated in the title does not cover

14. certain provisions contained in the body of the act.   Where the general subject of an act is ex-

pressed in the title, it is not necessary that matters properly connected therewith shall be also expressed in the title. *Kaufman* v. *Alexander* (1909), 173 Ind. 136, 141, 88 N. E. 502. . It is not necessary that the title should contain a complete abstract of the contents of an act. If a title expresses the general purpose of the act, everything contained in the body of the act which is germain to such purpose or properly connected therewith as a means of making the act effective to accomplish the purpose is covered by the title. *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 74 N. E. 985. The selection of roads to be improved under the act is reasonably connected with the improvement of highways, and the appropriation of money and the levy of taxes to raise funds to pay for such improvements must be regarded as being properly connected with the subject of the act as expressed in the title.

While the act in question relates to the improvement of highways, it is in no sense a local or a special law so as to bring it within the inhibition of §22, Art. 4, of the state Constitution.

A further objection to the law is predicated on the proposition that it invades the reserved powers of the people in several particulars mentioned. Just what is meant by the "reserved power of the people" is not clear. There are certain provisions of the Constitution by which the governmental powers delegated by that instrument to the several departments of government are limited and restricted so as to preserve inviolate certain fundamental rights of the people. Most of such provisions are embodied in Article 1 of the Constitution, known as the Bill of Rights, but specific limitations may be found in other parts of the instrument. If the term "reserved power of the people" is intended to apply to

some power which the people expressly reserved unto themselves by the terms of the Constitution, the provision of that instrument by which such reservation is made should be called to the attention of this court. As this is not done, it must be presumed that the term is used with reference to some supposed governmental power which the people impliedly reserved unto themselves at the time the Constitution was framed and adopted. Such an application of the term rests upon two assumptions, of which the first is that, originally, all governmental power rested in the people, and the second is that when they framed and adopted the Constitution they delegated a part of this power, but not all of it, to the various departments of government provided for in that instrument. Unless both of the propositions thus assumed are true, there can be no reserved powers of government in the people in the sense that appellee imputes to the term. The proposition involved in the first assumption may be granted as true, but to admit the truth of the second proposition would be to construe the state Constitution as a limited grant of power instead of a delegation of full power with express limitations.

Under such a construction, the general assembly would possess no power to legislate on a given subject unless a grant of such power could be found in the Constitution. This is the rule which governs Congress under the federal Constitution which expressly confers on Congress the power to legislate on certain designated subjects. No general power of legislation is conferred on Congress by the Constitution, and it has been uniformly held that all legislative power not expressly conferred on Congress is reserved to the several states. *McGuire* v. *Chicago, etc., R. Co.* (1906), 131 Iowa 340, 108 N. W. 902, 33 L. R. A. (N. S.) 706; *Holden* v. *Hardy* (1896), 14 Utah 71, 46 Pac. 756, 37 L. R. A. 103; *Nitka*

v. *Western Union Tel. Co.* (1912), 149 Wis. 106, 135 N. W. 492, 49 L. R. A. (N. S.) 337, Ann. Cas. 1913C 863; *State* v. *Hyman* (1904), 98 Md. 596, 57 Atl. 6, 64 L. R. A. 637, 1 Ann. Cas. 742; 6 R. C. L. 136, §136; *Hurtado* v. *California* (1883), 110 U. S. 516, 4 Sup. Ct. 292, 28 L. Ed. 232; *Railroad Co.* v. *County of Otoe* (1872), 16 Wall. 667, 21 L. Ed. 375. The reverse of this rule applies to the construction of state Constitutions. The Constitution of this state carries a general grant of legislative power. The language is: "The legislative authority of the state shall be vested in the general assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: 'Be it enacted by the general assembly of the State of Indiana'; and no law shall be enacted, except by bill." This section confers power to enact any law on any subject except in so far as the other express provisions of the instrument narrow, limit or deny the power. *Townsend* v. *State* (1896), 147 Ind. 624, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477; *State, ex rel.* v. *McClelland* (1894), 138 Ind. 395, 37 N. E. 799; *Hedderich* v. *State* (1885), 101 Ind. 564, 1 N. E. 47, 51 Am. Rep. 768; *Mount* v. *State, ex rel.* (1883), 90 Ind. 29, 46 Am. Rep. 192; *Beauchamp* v. *State* (1842), 6 Blackf. 299; *Firemen's, etc., Assn.* v. *Lounsbury* (1859), 21 Ill. 510, 74 Am. Dec. 115.

The courts of this state have generally followed this rule of constitutional construction. There are two recent cases, however, which some regard as a departure from the rule, in that they seem to recognize a residue of legislative power abiding in the people. *Ellingham* v. *Dye* (1912), 178 Ind. 336, 99 N. E. 1, 29, Ann. Cas. 1915C 200; *Id.* 231 U. S. 205, 58 L. Ed. 206; *Bennett* v. *Jackson* (1917), 186 Ind. 533, 116 N. E. 921. The question involved in both of these cases was the power of the general assembly to provide by

law a method to be pursued by the people in the adoption of a new constitution for the state.   In view of the questions which were before the court for consideration in those cases, it is apparent that the reserved power of the people, as recognized by these opinions, refers only to the inherent and indefeasible power of the people to alter and reform their government by the adoption of a new cônstitution.   The scope of these decisions must be confined to legislation the effect of which would be to deny, limit, or impair this inalienable right of the people.   They cannot be regarded as recognizing a reserved power in the people in any broad or general sense of the term.   The writer, being of the opinion that the power of the general assembly in the legislative field is limited only by the restrictions and limitations placed on such power by the provisions of the Constitution, was unable to assent to the doctrine announced in those opinions.   *Bennett* v. *Jackson, supra,* dissenting opinion.   Even though a reserved power in the people were admitted in the limited sense in which it is recognized in the two cases last cited, the admission could not avail appellee, as no such question is presented in this case.   By the creation of the highway commission the law does not establish a new department of government, as contended.   The commission is an administrative body intrusted with the application and administration of the statute under which it is appointed.   In this respect it is similar to the state board of tax commissioners, the Public Service Commission, and other boards and commissions created under the laws of this state.   The law is not open to the objection that it confers powers of a judicial nature on a body that is administrative in its character.

One or two other objections of minor importance are urged against the validity of the act.   None of these can

be sustained. After a careful consideration of the act in connection with the various provisions of the state and the federal Constitutions to which attention has been directed, the court is of the opinion that. the act does not conflict with or otherwise violate any of such constitutional provisions. The law is therefore valid.

The complaint was based solely on the theory that the act under which appellants were proceeding was illegal and void, and the ruling of the trial court on the demurrer and the judgment based on such ruling rests on the same theory. The court erred in its ruling on the demurrer, and for this reason the judgment must be reversed.

The judgment is reversed, with instructions to sustain the demurrer of appellants to the complaint.

NOTE.—Reported in 121 N. E. 433. Highways: taxation for, 16 Am. St. 368; validity of statute assessing cost of construction or repair of rural highway on land benefited, Ann. Cas. 1913D 550. See under (1, 2) 12 C. J. 1194; (3) 37 Cyc 971; (4) 37 Cyc 763; (5) 37 Cyc 720; (6, 7) 37 Cyc 720, 723, 724; (8) 37 Cyc 329, 1140, 1232; (9) 37 Cyc 320; (10) 37 Cyc 720, 725; (11) 12 C. J. 887; (12) 15 Cyc 559; (13) 37 Cyc 749; (14) 36 Cyc 1028; (15) 36 Cyc 1037; (17) 12 C. J. 785; (18) 12 ·C. J. 745.